## Case No. 6,346.

### Ex parte HEMENWAY.

### In re STEVENS.

### [2 Lowell, 496.] [1]

District Court, D. Massachusetts. Oct., 1876.

#### TENANT'S FIXTURES.

1. A tenant, who substitutes some fixtures for others, still serviceable, belonging to the landlord, cannot remove them at the expiration of the lease, without accounting to the landlord for those which he removed.

[Cited in Rosenau v. Syring (Or.) 35 Pac. 845.]

2. The right of the tenant to remove fixtures is not lost by non-payment of rent and notice to quit, but only by quitting. If the landlord has prevented the removal by an attachment of the fixtures, the right is not lost even by leaving the premises.

3. A parol renewal of a lease renews whatever rights the tenant had to remove the fixtures.

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

A special case was submitted to the court respecting the title to certain gas fixtures and bar-room fixtures, situated in the Marlborough Hotel, on Washington street, as between the landlord and the tenant's assignee in bankruptcy. The fixtures of the bar-room had been put in by a former tenant, who held under a written lease not produced in evidence, and the premises had been transferred by him, during his term, and from one tenant to another, and at last to the bankrupt; and each tenant had sold and transferred to his successor, by a bill of sale, all his furniture and fixtures, but without a particular description or a schedule. The original term expired, and no new lease was given; but the several successive tenants held on under parol tenancies, without any agreement with the landlord as to fixtures. Before the bankruptcy of [Nelson B.] Stevens, the landlord had notified him to quit, and had obtained possession of the premises; but, some days before the notice to quit, the landlord had laid an attachment on whatever chattels belonged to the tenant, not specifying what they were. The gas fixtures had been substituted by a former tenant for others belonging to the landlord, for which the tenant had never accounted. It was admitted at the hearing that a part of the fixtures of the bar-room were mere chattels, which belonged to the assignee; but the bar or counter, and certain things annexed to it, were in the nature of tenant's fixtures, which, it was agreed, might have been removed during his term by the tenant who put them in; but the question was, whether that right ever inured to the bankrupt, and, if so, whether he lost it when he lost his tenancy.

J. F. Barrett, for landlord.
R. Stone, Jr., for assignee.

LOWELL, District Judge. The gas fixtures come fairly within the intimation of the court in Whiting v. Brastow, 4 Pick. 310, where it is said: "A padlock can in no sense be called a fixture, for it can be taken away without injuring or defacing the building If put there by the landlord, or by the tenant in lieu of one found there, it would be the landlord's property, though not a fixture." It is proved or admitted that the gas fixtures were put there in lieu of those which the landlord had, and not because they were worn out, but that the tenant preferred a different style and appearance, perhaps more modern. The principle would not be of very extensive application, but in such a case as this the clear presumption is, that the tenant gave these fixtures to his landlord, instead of those which he took out and failed to account for.

As to the counter and its appurtenances, the first question is, whether, by the expiration of the term of the original lease, these fixtures became dedicated to the landlord, so that the bankrupt acquired no property in

them; and the second, whether, if he had a title, it was lost before the bankruptcy.

Taking the second question first, it was admitted that the landlord's attachment was intended to hold whatever belonged to the tenant, and that any attempt on his part to remove fixtures would have been resisted by the officer, in due pursuance of his precept. The attachment having been laid by the landlord himself before the notice to quit, and having been dissolved by the bankruptcy, the assignee should be in no worse position than the bankrupt was in on the day that he quitted possession. Did the forfeiture or loss of the tenancy by non-payment of rent and notice to quit destroy the right to sever and remove the fixtures? Mr. Taylor, in a note to the latest edition of his valuable work on Landlord and Tenant, says, in general terms, that the right is determined by an entry for condition broken. Tayl. Landl. & Ten. (6th Ed.) § 551, note 2. Only one of the cases which he cites supports the proposition, or indeed touches on the point at all.[2] That case is Whipley v. Dewey, 8 Cal. 36, in which a tenant, some time after his tenancy was ended, undertook to remove buildings, which, by the agreement between him and his landlord, were removable. The true ground of decision appears to be that the right was lost by laches or non-user. The learned judge who delivered the opinion of the court says that it is well settled that a tenant cannot remove erections made by him on the premises after a forfeiture or re-entry for condition broken. He cites no cases, and I have found none, to support that doctrine, unless in the same sense that no tenant can remove fixtures after his tenancy is out, which, perhaps, is all that is intended.

In Weeton v. Woodcock, 7 Mees. & W. 14, the lease was to be forfeited by bankruptcy. The tenant became bankrupt, and the landlord entered; and the assignees, three weeks after, sold the fixtures. The jury found that they had not sold them within a reasonable time; and the court sustained the verdict for the landlord with a semble or suggestion, in the opinion of Alderson, B., that perhaps the assignee's title was lost as soon as the entry was made. In the later case of Stansfeld v. Mayor, etc., of Portsmouth, 4 C. B. (N. S.) 120, this subject was thoroughly argued at the bar. The lease there contained an agreement that certain machinery should belong to the landlord, and machinery of all other kinds to the tenant; and the court held that the assignees of the tenant could remove his part of the machinery, though the lease was forfeited by the bankruptcy and the landlord had re-entered. They avoided deciding the point as a general one, and put it on the stipulation of the lease, or, rather, on the fact that there was such a stipulation; for there was no very apparent difference be-

tween the covenant and what the law would have been without it, its true object being merely to point out which of the fixtures belonged to the one party and which to the other. If this decision is followed in England, it will probably lead to the enunciation of a general principle in favor of the tenant.

These are the only decisions I have had time to find, and none others have been cited to me. I am of opinion that by the law of Massachusetts the right to remove fixtures is not absolutely lost by non-payment of rent and notice to quit, and I say it with no particle of doubt. I will not dwell upon the great injustice which might be worked, especially to a tenant's creditors, if this were the law: they are obvious, and are of themselves enough to make such a rule odious, and I had almost said impossible. It will be observed that here the attachment, which effectually prevented any dealing with the fixtures, was before the notice to quit; and, therefore, to save this part of the case to the landlord, his contention must be that no tenant whose rent is in arrear can take out his fixtures, which will hardly be argued; and, besides, this was not a case of forfeiture for condition broken, but of termination of tenancy by a statutory notice. My own opinion is, that for non-payment of rent the landlord, in case of an oral demise, has his statutory right to recover the premises, and to sue and attach the property of his tenant, and that these are his only remedies, unless the tenant, having an opportunity to remove his fixtures, chooses to leave them behind him when he goes out.

Whether the fixtures were surrendered before the bankrupt's holding began, is the only remaining question. It is clear that the lessee who put up these fixtures could assign them, as he did, during his term. It is equally clear that any number of successive parol occupancies from year to year, or from month to month, by the same tenant, make up, when they are past, but one tenancy. Birch v. Wright, 1 Term R. 380; Rex v. Inhabitants of Herstmonceaux, 7 Barn. & C. 551, per Bayley, J. And the successor of such a tenant, in the absence of evidence of any new or different contract with him, succeeds to the duties and the rights of his predecessor. Buckworth v. Simpson, 1 Cromp. M. & R. 834. So that the true point is, whether, by the expiration of the term of the written lease, the then tenant, by holding over and continuing under terms and conditions not given in evidence, and therefore to be taken to be those of the written lease so far as applicable, lost his right or privilege to remove the fixtures which had been put in during the term of the written lease. It has been decided that a mere holding over of a tenancy from year to year does not affect the tenant's right in this respect, and that so long as he holds under a fair claim of right as tenant he preserves his privilege. See Penton v. Robart, 2 East, 88,

---

[2] One other case refers to emblements, but they do not seem to me very closely analogous to fixtures. Davis v. Eyton, 7 Bing. 154.

and the remarks in Roffey v. Henderson, 17 Q. B. 574; Heap v. Barton, 12 C. B. 274; Minshall v. Lloyd, 2 Mees. & W. 450; Weeton v. Woodcock, 7 Mees. & W. 14.

On the other hand, it has been decided that one who accepts a new written lease of the same premises, with their buildings, &c., from his landlord, on the expiration of his former tenancy, has impliedly admitted that the fixtures, of which he accepts a demise, belong to the lessor. Loughran v. Ross, 45 N. Y. 792. Another case is sometimes cited for this proposition (Shepard v. Spaulding, 4 Metc. [Mass.] 416), but in that case the tenant had made a written surrender to the landlord, who held the premises for some years, and afterwards let them to one who let them to the original tenant; and it was held that the tenant could not afterwards remove a building which he had put up during his first term.

Both these cases turn on the intent to be derived from a written instrument, and do not govern the case of a mere holding over. Upon that the following dictum is more pertinent: "If a tenant remain in possession after the expiration of his term, and perform all the conditions of the lease, it amounts to a renewal of the lease from year to year, and, I take it, he would be entitled to remove fixtures during the year." Per Woodward, J., in Davis v. Moss, 38 Pa. St. (2 Wright) 353. Those cases, I say, turn on the implied agreement of the parties; and this case finds "there was never any agreement between the landlord and tenants who succeeded said Meserve or said Roberts & Champlin in respect to said fixtures," and goes on to say that bills of sale were made of the chattels and fixtures from one tenant to the next, but without any notice to the landlord.

Under these circumstances, I am of opinion that the fixtures of the bar-room were never surrendered to the landlord. It was said that each tenant should have severed the fixtures when he sold his lease, or whatever he did sell, and the new tenant should have reannexed them. But the law does not compel vain and useless trouble and expense. If that would have saved the right, I am clear that it was saved without it.

Judgment, that the landlord owns the gas fixtures, and the assignee those of the barroom.

HEMENWAY (BAKER v.). See Case No. 770.

HEMENWAY (WOPE v.). See Case No. 18,042.

HEMINGWAY (FIREMEN'S INS. CO. v.). See Case No. 4,797.

HEMMER (UNITED STATES v.). See Case No. 15,345.

HEMPFIELD R. CO. (FOX v.). See Cases Nos. 5,010 and 5,011.