## WHIPLEY *v.* DEWEY *et al.*

Tenants have a right to remove buildings erected by them, at any time before the expiration of their leases.

Tenants have no right to remove buildings erected by them, after a forfeiture, or re-entry, for covenant broken.

Where a landlord agreed to allow his tenant a reasonable time, after the expiration of his lease, to remove his buildings, and the tenant surrendered or forfeited his lease, before the expiration thereof, the intention of the parties must be confined to its legal expiration, and not to the wrongful act of the lessee, in terminating it, and the lessee can claim no rights under the contract.

There is no moral obligation, under such circumstances, sufficient, as a consideration, to support a subsequent promise of the landlord, to allow the tenant to remove his buildings.

APPEAL from the District Court of the Eleventh Judicial District, County of Yolo.

The record in this case shows that some time in 1850, Whipley, and several others, leased a house and lot from the defendants; that after the plaintiff had entered into possession, he obtained permission from Dewey, one of the defendants, to erect two small wooden tenements upon the lot, with the privilege of removing them. The lease was terminated before the time specified, (how, it does not appear,) the plaintiff alleging, in his declaration, that the defendant re-entered and took possession. Some time afterwards, Dewey & Smith offered the lot for sale,

at auction.    The plaintiff notified the defendant Dewey, that he would forbid the sale, as he claimed the two houses he had erected on the lot.    The defendant Dewey agreed that if the plaintiff would not interfere with the sale, he would pay him the value of the improvements    No sale was made of the property, and the houses were consumed by fire some time afterwards. Whipley now sues Dewey & Smith for the value of the houses.

The Court below entered judgment for plaintiffs.    Defendants appealed.

*Robinson, Beatty & Botts,* for Appellants.

The respondent says, in his complaint, that the lease from Dewey & Smith, to plaintiff and others, was terminated by Dewey & Smith, before the expiration of the time for which it was originally given.    Hê does not say it was terminated by the agreement of both parties to the suit; neither does he charge Dewey & Smith with illegally terminating the same, by an illegal or forcible ouster of their tenants.

Therefore, we may infer that the tenant did some acts which the landlords had a legal right to treat as a forfeiture, on the part of the tenant, and that they did so treat it.

We come to this conclusion, for two reasons: First, because we cannot see any mode, in which the landlords alone could terminate a lease, before the time fixed in the lease for its termination; Second, any pleading must be construed most strongly against the party pleading.    See 1 Chitty, 217.

If the right to remove improvements ever existed, (which we deny, at least as far as regards Smith,) it ceased to exist as soon as the lease became forfeited, or otherwise legally terminated. See Preston v. Bigs, 16 Vermont, 124; B. v. St. John, 16 Conn., 322; Sheppard v. Spalding, 4 Metcalf, 416.

There is a principle of the common law, that a tenant may, for the purposes of trade and manufactures, erect on rented premises, temporary improvements and fixtures, which he may again remove; provided always, said removal is made at or before the termination of his lease.

Of late years, the Courts of some of the American States have shown a disposition to extend the same privilege to all tenants, that is, to allow them to remove the improvements which they themselves put on, if said removal is made before the termination of the lease.

The respondent seems only to rely on the promise of Dewey, as the foundation of his right to sustain this action.    A promise, to sustain an action, must be made on some good and valuable consideration.

*Smith & Hardy* for Respondent.

" If the tenant is prevented from removing the fixtures by any
4

agreement with the landord, he is not presumed to have abandoned his right to remove." Taylor's Landlord and Tenant, § 552; Hallen v. Rundy, 3 Tyrwhit, 959.

It is plainly shown, that for some time a contest was going on, the respondent all the while striving to remove his fixtures, and was all the time deterred by the act and promises of the appellants.

But if, in fact, the appellants had no legal right to remove the improvements, there was a moral right, and such a right is a sufficient·consideration to support a promise, under these circumstances.

In Lee v. Muggeridge, 5 Taunton, 36, Lord Mansfield said: "It has long been established, that where a person is bound morally and conscientiously to pay a debt, though not legally bound, a subsequent promise will give a right of action."

"Where two parties are contending, and one releases his pretensions to the other, there can be no color to set this release aside, because the man who made it had the right." Ibid.; Bennett v. Paine, 5 Watts, 259; Moore v. Fitzwater, 2d Randolph, 442.

MURRAY, C. J., after stating the facts, delivered the opinion of the Court—BURNETT, J., concurring.

The first point which I propose to examine is the character of the agreement between the plaintiff and Dewey, concerning the erection and removal of the houses.

It is well settled by modern decisions, that a tenant may remove buildings erected by him at any time before the expiration of the lease, and the deduction sought to be made from this proposition is, that the agreement between the parties (they both being aware of the law on this subject) was understood to confer upon the plaintiff something more than his strict legal right. In other words, being allowed by the law of his contract, to remove the buildings at any time before the expiration of his term, he sought and obtained the further privilege of removing them after the expiration of his lease; it would have been useless to have solicited as a favor what he already possessed as a right, and the only inference to be drawn from the agreement is, that he was to be allowed a reasonable time after the expiration of his lease to remove his buildings.

This is carrying the doctrine of presumption as far at least, as it would be safe to go, and if we are allowed to indulge in presumptions or inferences, the most natural one would be, that at the date of this contract, the parties imperfectly understood their rights, and therefore stipulated for precisely the same privileges which the law of the contract would have afforded. Suppose, however, the understanding to have been that Whipley should have a reasonable time after the expiration of his

term, to remove his buildings, it must be borne in mind that the moving cause or consideration of this agreement, was the lease under which the plaintiff entered. It appears from the declaration, that before the lease expired the defendants re-entered and took possession. Whether this was by agreement, or on account of a forfeiture for non-payment, or some other cause, does not appear. The pleadings must be taken most strongly against the pleader, and the inference is irresistible, that the defendants forfeited their lease.

It is well settled that a tenant cannot remove erections, made by him on the premises, after a forfeiture or re-entry for covenant broken. Admitting that the defendant had agreed to allow the plaintiff to remove, after expiration of the lease, the intention of the parties must be confined to the legal expiration thereof, by its own limitation, and not by the wrongful act of lessees terminating the same. The consideration of the contract, as before remarked, was the lease, and the plaintiff, having voluntarily or illegally terminated the same, ought not to be allowed to set up a right under the contract.

But it is contended, admitting the plaintiff had no right to remove after the expiration of the lease, he still had a moral right to the improvements, or the value thereof, and that this is a sufficient consideration to support a subsequent promise.

It is difficult to see how there was any moral obligation on the part of the defendants, to pay for the plaintiff's improvements, particularly after he had broken his covenant, and forfeited his lease. Besides, it is extremely doubtful from the testimony, whether there ever was a sale or an agreement to pay the plaintiff, except on condition that he would not interfere with the proposed sale of the lot. In the event of a sale he would have been entitled to payment, but as there was no sale there was no consideration to support the promise.

Judgment reversed, and cause remanded.