[Civ. No. 1288. Second Appellate District.—March 14, 1913.]

# E. L. EARLE et al., Appellants, v. CHARLES KELLY, Respondent.

LANDLORD AND TENANT—FIXTURES DEFINED.—Fixtures are those things which are so attached to realty as to be considered in law a part thereof.

ID.—RIGHT OF TENANT TO REMOVE FIXTURES.—At common law a tenant of real property has no right to remove fixtures, whether placed on the realty at his own expense or not.

ID.—AGREEMENT FOR REMOVAL OF FIXTURES.—But a lessor may be bound by an agreement permitting his lessee to remove fixtures erected by the latter.

ID.—RIGHT TO REMOVE FIXTURES DESIGNED FOR SPECIAL USE.—And a tenant may remove structures or appliances designed for special uses, such as trade, domestic, or ornamental fixtures. Agricultural fixtures are usually not regarded as within this special class.

ID.—RIGHT TO REMOVE FIXTURES—TIME FOR EXERCISING.—A tenant under an express agreement permitting him to remove fixtures has a larger right as to the time when he is permitted to make the removal than where he is depending upon a privilege which the law by implication attaches to his lease. He may exercise such right of removal within a reasonable time after the expiration of his term.

ID.—TIME FOR REMOVING TRADE FIXTURES.—But if a tenant would remove trade fixtures, he must do so during the term.

ID.—RIGHT TO REMOVE FIXTURES—EFFECT OF NEW LEASE OR RENEWAL. Where a tenant makes a new lease which contains no stipulation giving him the right to remove fixtures which he might have removed during the first term, he loses the right of removal, although the new lease is for the same rental and term as the former, or is in effect merely a renewal.

ID.—EFFECT OF TENANT HOLDING OVER.—Where a tenant holds over and the landlord accepts rent, a new tenancy is created, and the tenant's right to remove fixtures is lost.

ID.—AGREEMENT FOR REMOVAL OF FIXTURES—AUTHORITY OF AGENT.— The evidence in this action by a lessor for damages for the removal of a building from the premises shows that his agent was not authorized to make a contract with the tenants to remove fixtures before the termination of their holding.

ID.—HOLDING OVER BY TENANT—CREATION OF NEW LEASE.—Under section 1945 of the Civil Code, a new term and a new lease arise by force of law upon a tenant holding over and paying rent; the statute does not extend the old term, it creates a new one for a period not exceeding one year.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial. W. R. Guy, Judge.

The facts are stated in the opinion of the court.

L. L. Boone, for Appellants.

Luce & Luce, for Respondent.

JAMES, J.—Plaintiffs brought this action to recover the sum of three thousand dollars as damages alleged to have been sustained through the act of defendant in removing from the land of plaintiffs a certain building. The facts, in so far as they are necessary to be stated to illustrate the controversy, are as follows: In 1888 the grantor of plaintiffs leased certain ground, which was a lot of land situated in the city of San Diego, to one Goddard, for a term of five years. At the time this lease was made the ground was bare of any buildings or other improvements, and Goddard proceeded to place thereon a structure which he moved from another part of the city.

The structure was in form a frame building, in the main designed to be used for a livery stable, but having some rooms upstairs and several small side rooms which were subsequently rented for store purposes. That portion designed to be used for a livery stable had no floor. Goddard intended to use the building in carrying on his business as a livery stable keeper, and he did so use it, as did also successive tenants of the property, including the defendant. All of the building was used for such purposes, except a portion upstairs thereof and the small storerooms, which were let to subtenants. The building was placed upon mud sills, some of which were imbedded in the ground to a depth of about eighteen inches, and some rested upon the surface. This condition of foundation was made necessary because the surface of the lot was not level and regular. In 1892 Goddard sold out his interest in the lease and building to one Jones, and Jones in turn sold the same property and rights to one Smith in 1894, and in 1896 defendant Kelly became the purchaser of the business and fixtures connected therewith. Meanwhile, and before the five-year lease given to Goddard had expired, A. L. Ross, the husband of the plaintiff Ross, purchased the real property affected by the lease. He testified that he made the purchase on behalf of the plaintiffs here, and took title as their trustee; at any rate, in April, 1894, he conveyed the title to plaintiffs who since that time have remained the owners thereof. The amount of the monthly rental as fixed by the Goddard lease was the sum of one hundred dollars. At the time defendant became a tenant of the property, the rental had been reduced to twenty-five or thirty-five dollars, and an arrangement was made by which defendant was to pay twenty-five dollars per month. In April, 1906, this rental, by notice, was changed to seventy-five dollars per month, and again in 1907 to one hundred dollars per month, and later still, to the sum of one hundred and twenty-five dollars per month, which amount defendant was paying at the time he vacated the premises. At about February, 1909, defendant decided to vacate the premises and end his tenancy, and proceeded to move off from the ground the building before mentioned. A. L. Ross, as agent for the plaintiffs, served upon defendant a notice demanding that he do not molest the building and asserting that the same was the property of plaintiffs. Not·

withstanding this notice, defendant proceeded to and did remove the building from the lot, with the result that this action was brought to recover damages as before stated. It was not shown by any of the testimony that the original lease to Goddard contained any provision respecting the right of the lessee to remove from the real property any fixtures which he might place thereon; neither was it shown that the subsequent tenants who occupied the premises prior to Kelly had any agreement with the owners respecting the removal of the improvements.

Fixtures are those things which are so attached to realty as to be considered in law a part thereof. And it is correct to say as a statement of the common law rule that a tenant of real property has no right to remove such fixtures, whether they have been placed there at his own expense, or not; for whatsoever addition he may make to the real property of his landlord he loses all right of ownership therein. However, this rule is subject to the qualification that the lessor may be bound by an agreement permitting his tenant to remove fixtures erected by the latter. This is only another way of saying that an agreement of that kind does not belong to a class of cases involving subject matter respecting which the parties cannot make a valid contract. The further and only real exception to the rule is furnished where the tenant places upon the demised premises structures or appliances which are designed to be put to certain special uses; such as for use in trade or commercial enterprises in which the latter is engaged; or domestic or ornamental fixtures. Agricultural fixtures are not admitted generally to belong to the excepted class; at least, there is a divergence of authority upon that subject. (See Tiffany on Landlord and Tenant, p. 1570; Taylor's Landlord and Tenant, sec. 544; Jones on Landlord and Tenant, sec. 710.) Our Civil Code, section 1019, in defining fixtures which are subject to removal by the tenant, confirms the long admitted rule respecting that subject. It provides as follows: "A tenant may remove from the demised premises, at any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

Cognate with this statute is section 1013 of the Civil Code, which provides: ''When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as provided in section ten hundred and nineteen, belongs to the owner of the land, unless he chooses to require the former to remove it.'' It may be noted that while the general rule of the authorities and text-writers accords to the tenant the right to remove a fixture of the excepted classes, irrespective of the manner of its attachment to the realty, provided it can be severed without serious injury to the freehold, our code limits such right somewhat further by providing that the fixture may be removed unless it has, ''by the manner in which it is affixed, become an integral part of the premises.'' Otherwise both sections are declaratory of the general rule. A tenant under an express agreement permitting him to remove fixtures has a larger right as to the time when he is permitted to make such removal, than where he is depending upon a privilege which the law by implication attaches to his lease contract, as to the removal of the fixtures. It has been held that where the removal is claimed under an express agreement permitting the act to be done as a part of the consideration of the lease contract, the tenant does not lose that right by the expiration of his term, but may within a reasonable time thereafter exercise it. As to trade fixtures, it is required that the removal shall be made during the term of the tenant's estate. Decisions of our supreme court to this point are: *Marks v. Ryan*, 63 Cal. 107 (citing *Merritt v. Judd*, 14 Cal. 60); *Wadman v. Burke*, 147 Cal. 351, [3 Ann. Cas. 330, 1 L. R. A. (N. S.) 1192, 81 Pac. 1012.] These decisions hold, too, that where the tenant makes a new lease which contains no stipulation giving him the right to remove fixtures which he might have removed during the first term, he loses the right to remove the fixtures. Under such facts it is held that where the tenant makes a new lease, it is understood as a part of his agreement, unless otherwise stated, that he leases the ground and all its fixtures, which latter are then presumed to belong to the landlord, just as though he were a stranger and became a lessee of the ground for the first time. And the same result follows, even though the new lease is for the same rental and term as the former one, or, in effect, merely a renewal

of the old lease. And where a tenant holds over beyond the end of his lease and the landlord accepts rent from him, a new tenancy is created. (*Blumenberg* v. *Myers,* 32 Cal. 93, [91 Am. Dec. 560].) It is stated in Amos and Ferard on Fixtures, page 159, cited by Tiffany on Landlord and Tenant at page 1595: "It seems to follow that the tenant's right of removing fixtures will be lost, although a further tenancy may arise, merely from his holding over and paying rent after the expiration of his term; for he thereby becomes a tenant under a new tenancy from year to year." Section 1945 of our Civil Code provides that "If a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one month when the rent is payable monthly, nor in any case one year." Under the provisions of the section last quoted it would seem that a new term and a new lease would arise by force of law upon the tenant's holding over and paying rent, just as thoroughly as though a new express lease had been made between the parties for a term within that fixed by the statute. The statute does not extend the old term when the tenant holds over; it creates a new one for a period not exceeding one year.

In character the building erected by defendant's predecessor in interest might perhaps be classed as a trade fixture, and for the purposes of this decision it may be assumed that the building was of that character. So assuming, the questions presented will be viewed most favorably to the defendant. As to trade fixtures properly considered, Goddard or his successor had the right to remove them at any time prior to the expiration of the lease contract. When this term expired, no further right to remove the fixtures resided in the tenant. Therefore, if defendant was entitled to remove fixtures which he found attached to the property when he took possession, it must be that he was so entitled because of some new agreement made with the landlord. It was not shown by the evidence that any such agreement was made, although by the evidence it was established that at the time he purchased the interest of the tenant then residing upon the property, in 1906, Kelly went with his vendor to A. L. Ross, who was acting as agent for plaintiffs, and told Ross that he was about

to purchase the building and interest of Smith, and that Ross replied that he would be glad to have the place rented and that he, Kelly, would be a suitable tenant. During the subsequent years it appeared further that defendant paid all of the taxes assessed against the buildings on the property. This evidence was introduced under the defense set up by the answer that plaintiffs had at all times known and conceded the claim of ownership of defendant in the buildings. Conceding, because of absence of objection thereto, that the defense of an estoppel is sufficiently pleaded in the answer (the facts constituting the alleged estoppel not being set forth), it does not appear that the acts of the agent Ross were sufficient to divest plaintiffs of their right in the ownership of the buildings which had long prior thereto become a part of the real estate and freed from the claims of their tenants. At no time was it agreed in express terms that defendant was to become invested with whatever interest plaintiffs had in the buildings, or that he would be entitled to remove them during the term of his tenancy. In fact, nothing at all was said about the removal of the buildings, and at no time did either of the plaintiffs have any communication directly with defendant. There was not sufficient shown in evidence to authorize the inference that A. L. Ross, in securing tenants for the property of plaintiffs, or arranging the terms thereof, had any authority to make an agreement which would deprive plaintiffs of a vested title to fixtures located upon their property. The authority given to the agent Ross appears to have been sufficient to authorize him to act in the ordinary capacity of a rental agent, but not sufficient to authorize him to make a contract with a tenant whereby the tenant might, before the termination of his holding, remove any portion of the fixtures on the real property so let to him. Viewing all of the evidence most strongly in favor of the defendant, and accepting his testimony as to matters in controversy to be true, it must be said that the proof as made does not support the verdict of the jury.

The judgment and order are reversed.

Shaw, J., concurred.

ALLEN, P. J., concurring:—I concur in the judgment. I am of opinion, however, that the sufficiency of the evidence to support an estoppel is not involved. The facts constituting an estoppel were not pleaded, and, therefore, in my opinion, all of the evidence tending to establish such estoppel was improperly received and the court erred in relation thereto.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 13, 1913.