[Civ. No. 1667.   Fourth Appellate District.—December 1, 1937.]

EMMA CLARK, Appellant, v. WILL TALMADGE, Respondent.

704

Charles J. O'Connor and Donald S. Gillespie for Appellant.

William Guthrie and Guthrie & Curtis for Respondent.

BARNARD, P. J.—This is an action for declaratory relief to determine the ownership of certain fox pens and certain fencing. The plaintiff was the owner of a mountain ranch consisting of twenty-two acres, which was occupied and used as a fur farm by a corporation under a lease which expired on April 20, 1936. On March 3, 1933, the plaintiff served a notice on the lessee to pay certain rent or quit the premises. The rent was not paid and an action in unlawful detainer was filed on May 3, 1933. Judgment by default was entered and a writ of restitution was issued under which the plaintiff was placed in possession of the leased premises on September 15, 1933. At that time certain fencing and fox kennels or pens which had been placed on the property by the lessee were still there. On November 23, 1933, the lessee executed and delivered a bill of sale conveying to the defendant all of said fox kennels and fencing. When the defendant attempted to remove the pens and fencing during the next March or April the plaintiff refused to permit him to do so and brought this

action. From a judgment in favor of the defendant the plaintiff has appealed.

The first point raised is that a finding that the parties at all times treated this property as personal property is without support in the record. There is no dispute as to the fact that the fencing was attached to the real property in such a manner as to make it a part thereof in the absence of any agreement to the contrary. The appellant maintains, however, that the evidence is insufficient to support a finding that the fox kennels or pens were built entirely on the surface of the ground and were not affixed thereto. While this point is immaterial, the evidence, although conflicting, supports that finding.

Aside from conflicting evidence, appellant's contention is largely based upon her interpretation of a contract provision contained in the lease. Article 2 of that instrument provides that the lessee will do the following things:

"(1) Enter upon the demised premises immediately upon the execution of this lease and proceed to repair the present buildings, which they are to occupy during the term of this lease.

"(2) The lessees further agree that they will bear all cost of labor and materials used in such repairing of buildings now standing upon the property, and at the termination of the lease, said improvements are to revert to the lessor.

"(3) Any new buildings constructed upon said property subsequent to the date hereof or prior to the termination of the lease are to be the property of the lessees and are subject to removal at the termination of the lease.

"(4) Said improvements which may be placed upon said property by the lessees may consist of fox kennels, fencing, etc."

Appellant contends that the word "improvements" in clause (4) refers to the improvements which are mentioned in clause (2), and that it follows that these kennels and fencing were under clause (2), to revert to the lessor. We think the plain meaning of these provisions is that the improvements mentioned in clause (2) are the repairs on the buildings which were originally on the leased property and which were to be occupied by the lessee and that the improvements mentioned in clause (4), consisting of fox kennels and fencing, are included in the new buildings mentioned in

clause (3) to be constructed on the property after the execution of the lease and which are made subject to removal. If there is any ambiguity in the terms of the lease the trial court correctly construed the same in favor of the lessee. (*Churchill* v. *More*, 4 Cal. App. 219 [88 Pac. 290]; Civ. Code, sec. 1069.)

The complaint in this action alleges that the fences were constructed "on" the real property and the pens "within" the fences, and then alleges that they were "abandoned" to the appellant. There was evidence that while the action in unlawful detainer was pending the appellant attached these pens and the fencing in connection with her effort to collect certain rent and that the judgment which she secured was paid through the sale of other property belonging to the lessee, thus releasing the attachment. There was also evidence that on September 15, 1933, at the time possession of the real property was delivered to the appellant by the constable the president of the lessee corporation informed the appellant that he wanted the respondent to have the pens and fence as the corporation owed him money, that she refused to permit the respondent to have the pens until he could show a "paper", that she was then advised by the president that he would give a bill of sale to the respondent and she agreed that this should be done, and that the bill of sale was later given to the respondent. The finding complained of finds complete support in the record.

It is next urged that the decision of the court and its finding and conclusions of law, to the effect that the respondent is the owner of this property, are against law and contrary to the evidence. The argument under this head is based upon the contention made throughout that there was no agreement for the removal of this property, that this property was not within the exception relating to trade fixtures and, under general laws relating to landlord and tenant, became a part of the real property, and that, in any event, it was not removed within a reasonable time after the termination of the lease.

With certain exceptions, the general rule is that buildings or equipment which are attached to real property in such a manner as to become what is known as fixtures, may not be removed by a tenant at the expiration or termination of his lease. It is well settled, however, that a different result obtains where the parties have by express agreement pro-

vided that the tenant may remove the improvements. (*Earle* v. *Kelly*, 21 Cal. App. 480 [132 Pac. 262] ; *Stewart* v. *Leasure*, 12 Cal. App. (2d) 652 [55 Pac. (2d) 917] ; *Churchill* v. *More*, *supra; Clawson* v. *Harris*, 10 Cal. App. (2d) 521 [52 Pac. (2d) 496] ; *R. Barcroft & Sons Co.* v. *Cullen*, 217 Cal. 708 [20 Pac. (2d) 665].) ■ It has also been held that a tenant who has an express agreement permitting him to remove fixtures has a larger right as to the time within which they must be removed than is the case where no such agreement exists, and that he may remove them within a reasonable time after the expiration of his term. (*Earle* v. *Kelly*, *supra*.) ■ It is here contended that the right to remove the property after the termination of the lease, even under such an agreement, does not apply where the lease is ended before its expiration date because of a failure to pay rent. In support of this contention the appellant cites the early case of *Whipley* v. *Dewey*, 8 Cal. 36, where the court said that in agreeing to allow the removal of erections "after expiration of the lease" the intention of the parties was confined to the *legal* expiration thereof by the terms of the limitation itself. The case before us involves a very different agreement, a different intention appears both from the language of the lease and the conduct of the parties, and the fact that the property here in question was to remain personal property which could be attached as property of the lessee and which could be removed was recognized by the appellant after the covenant for rent was broken, after she had elected to terminate the lease, and even after she had regained possession. We take it that the right of removal after failure to pay rent and a resulting termination of the lease, still exists if it is so agreed by the parties. That is the situation here, where the agreement that the added improvements are to remain the property of the lessee specifically makes them subject to removal at the termination of the lease rather than at the expiration thereof. This interpretation of the lease has been accepted and acquiesced in by the appellant as shown by her conduct and this furnishes the best evidence of the intention of the parties. By attaching the property after the covenant for the payment of rent was broken and after she had taken steps to terminate the lease she recognized not only that the property in question was personal property but that it belonged to the lessee. After regaining possession of the real

property, upon being told of the intention of the lessee to turn the personal property over to the respondent the only objection she made was that she would not allow him to remove it until he could show a paper, in other words, an evidence of title. When told that she would be furnished such evidence she agreed that this should be done. Under the cicumstances here appearing we think the court was justified in holding that the lessee, or his assignee, then had the right to remove the property within a reasonable time.

The remaining question is whether the evidence is sufficient to support the implied finding of the court that it was removed within a reasonable time. What is a reasonable time depends upon the facts in a particular case. The property was under attachment until September 15, 1933, and could not have been removed prior to that time. Disregarding conflicting evidence, relied upon by the appellant, there is evidence that there was an exceptionally heavy fall of snow in the vicinity of this ranch in the winter of 1933–34, which started in October and stayed until May, and that during that time the ranch was inaccessible. The question was one for the trial court and, under such circumstances, we are unable to say that it abused its discretion in holding that this delay was not unreasonable.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.