[Civ. No. 3294.   Fourth Dist.   Dec. 20, 1945.]

CHARLES J. LYONS et al., Plaintiffs and Appellants, v. CHARLES G. EMERY et al., Defendants and Appellants.

Hugh G. Maddox for Plaintiffs and Appellants.

Chandler & Wright for Defendants and Appellants.

BARNARD, P. J.—This is a quiet title action involving certain hog feeding pens, fences and a small house and garage situated on land in Orange County belonging to the defendant. The plaintiff claimed ownership of this personal property as being trade fixtures while the defendant claims that these improvements had become a part of the realty.

It appears that sometime prior to 1931, the defendant leased this and other real property to one Bastanchury under a written lease which provided that all improvements should go to the lessor at the expiration of the lease. This lease terminated in November, 1931. Prior thereto, Bastanchury had subleased this property to one Dugan and a part of the pens and equipment here in question had been built thereon. The premises had been used for the purpose of feeding hogs and sometime before 1932 Dugan sold out to one Nishamura, giving him a bill of sale covering the improvements then on the place. At a meeting in February, 1932, between the defendant and Nishamura and others similarly situated, it was agreed that the tenants should continue on a month to month basis and nothing was said about removing any improvements. Nishamura added more feeding pens and other equipment, including an addition to the small house. Nishamura operated the place for some ten years and, early in 1942, sold his hogs to the plaintiff and also gave the plaintiff a bill of sale covering the improvements on the place. The plaintiff took possession on April 1, 1942, and, as he testified, operated the place until the spring of 1943. At that time he sold his interest to the Wallace Finance Company.

The complaint in this action was filed on July 23, 1943. After a trial, the court found most of the facts above stated and also found that the addition to the house, a garage, tool house and bunkhouse, added by Nishamura, were built on mudsills; that the hog pens and feeding pens constructed by him, as well as those which had been previously built, are of very substantial construction with concrete floors and heavy posts imbedded in the ground and firmly affixed to the real property; that these various pens could not be removed except by dismantling them and using the material as secondhand material; that it would cost as much or more than the pens are worth to move, dismantle and reconstruct them; and that the improvements here in question were used in conducting a commercial enterprise and are trade fixtures. The court then further found that on or about May, 1943, the plaintiff sold his hog business and all of his rights to the Wallace Finance Company. The court then entered its judgment quieting title to the personal property in question in the plaintiff, and further providing that he must remove such property from the real property on which it is situated within sixty days after the judgment becomes final and that, otherwise, his in-

terest in this personal property shall cease and terminate. From this judgment both the plaintiff and the defendant have appealed.

While the plaintiff gave notice of appeal from the entire judgment he states in his brief that he objects only to that part of the judgment which requires him to remove the structures claimed by him within sixty days after the judgment becomes final. It is argued that this portion of the judgment goes beyond the issues raised by the pleadings, that the action was purely one to quiet title to personal property, and that this part of the judgment is entirely foreign to any issue in the case. There is no merit in this contention. The real issues in this quiet title action were whether these improvements constituted trade fixtures and if so whether, at the time this suit was filed, the plaintiff still had a right to remove them. In this equitable action the court had the power, in granting any relief to the plaintiff, to require him to act in an equitable manner. If the plaintiff was entitled to these improvements, and had a right to remove them as being trade fixtures, it was entirely consistent with the relief asked for that a limit be placed on the time within which he could exercise that right. The time fixed by the court for this purpose was at least reasonable, if it was not liberal. If it be assumed that the plaintiff is the owner of these fixtures and that he is entitled to remove them there is nothing in the case, whether of fact or of law, which indicates that he has any right to have them remain indefinitely on the defendant's real property.

It would appear that most of the improvements here in question were affixed to the land in a manner which would ordinarily make them a part of the realty. A question is raised as to whether the operations in question were sufficiently agricultural in nature to make the trade fixture rule inapplicable. Assuming the trade fixture rule to be otherwise applicable there is a further question whether, under that rule, the improvements would not have to have been removed while the plaintiff was still a tenant. (See, *Earle* v. *Kelly,* 21 Cal.App. 480 [132 P. 262].) Even if a reasonable time should be allowed to remove the fixtures after the tenancy ended, contrary to the usual rule where there is no express agreement, another question would still remain here since, apparently, two or three months expired after the plaintiff's

tenancy terminated and before suit was filed, during which no attempt was made to remove the property.

It is unnecessary to decide the questions thus suggested as it appears that the judgment must be reversed for another reason. ■ The court found that in May, 1943, some two months before this action was filed, the plaintiff sold this hog business and all of his rights therein to the Wallace Finance Company. The plaintiff argues that there is evidence that the sale to the Wallace Finance Company was made through an escrow and that there is no evidence that the escrow was ever closed. However, the plaintiff testified that he took possession of the property on April 1, 1942, and that he operated the ranch until the spring of 1943; that he then sold it to the Wallace Finance Company; that they had a little trouble in the escrow; and that the Wallace Finance Company took possession in June or July, or maybe August, that he did not know just when they did take possession. Assuming, without holding, that the escrow would postpone the time when the plaintiff ceased to have any interest in the property, the evidence as a whole indicates that he had parted with any possible interest therein at the time this action was filed and the court's finding that he sold out on or about May, 1943, is sufficiently supported, insofar as it is a finding that he parted with all interest in the property at about that date. ■ It is well settled that a plaintiff in a quiet title action must rely on the strength of his own title, and it seems clear that he cannot maintain such an action which is brought after he has disposed of all of his interest in the property. To say the least, the findings are conflicting and under the findings here made the plaintiff was not entitled to recover, regardless of what the decision might be on the other points raised.

The judgment is reversed. Defendant to recover costs of appeal.

Marks, J., and Griffin, J., concurred.