[Civ. No. 15991. First Dist., Div. Two. Dec. 1, 1954.]

UNITED PACIFIC INSURANCE COMPANY (a Corporation) et al., Appellants, v. KATHRYN CANN, as Administratrix etc., et al., Defendants; ALASKA PACKERS ASSOCIATION (a Corporation), Respondent.

H. A. Dannenbrink for Appellants.

Pillsbury, Madison & Sutro, Maurice D. L. Fuller, Wallace L. Kaapcke and Carlisle B. Lane for Respondent.

DOOLING, J.—Appellants brought this action to foreclose a chattel mortgage. Judgment was given for plaintiffs as to all of the issues and all of the property against all defendants except as to the property in controversy with defendant-respondent Alaska Packers Association.

On June 13, 1947, one Cann was the tenant in possession of certain real property owned by respondent which he was using for shipbuilding. On that date he executed the chattel mortgage upon which this action is based. The lease under which Cann held possession provided that certain structures etc. placed on the real property by the lessee or certain of his predecessor tenants "shall be and remain personal property whether or not affixed to the demised premises, and Lessee shall have the right to remove the same upon any termination of this lease."

Cann got into serious financial difficulties and in November, 1947 he abandoned the leased premises. On October 27, 1947, Cann assigned all of his assets in the shipyard for the benefit of all creditors, to the legal firm of Dannenbrink & Graves. (Graves is one of appellants herein and Dannenbrink is his counsel.) On January 12, 1948, by a group of instruments simultaneously executed, the assignment for benefit of creditors was transferred to one Ferro, and Ferro entered into a contract with one Peterson to sell all of the physical assets of said shipyard to Peterson upon Peterson's agreement to pay $5,000 down and $1,200 per month until the total sum of $125,000 was paid. It was further agreed that the down payment of $5,000 and $1,000 per month of the $1,200 monthly payments should be paid to and for the benefit of appellants herein "until there has been paid . . . for said account the sum of $60,000, plus interest at 5% . . ." The balance was to go to the payment of the other creditors.

By a lease dated January 1, 1948, (but as to which there is testimony that it did not become operative until the aforesaid agreements of January 12 were executed) respondent leased the same real property to Peterson with a similar clause in the lease regarding any structures etc. placed on the property by Cann or his predecessors above quoted giving the like right to remove them to Peterson. Peterson likewise fell into

arrears in his rent and in January 1949, he quit the premises without exercising his right to remove any of the property here in issue from the premises.

The complaint in this action was filed on October 24, 1950. The trial court found in favor of respondent that it was the owner of the following equipment: 1. Marine ways for small boats with accessory equipment; 2. large marine ways with accessory equipment; 3. electric wiring; 4. one incinerator.

As to the incinerator appellants claim that respondent during the trial relinquished any claim to it and a reading of the record satisfies us that this is correct. While one Wall, respondent's yard superintendent, was being examined on direct as a witness for respondent he testified concerning the incinerator: "So far as the Alaska Packers are concerned, anybody that would remove it would be entitled to it."

Thereafter on cross-examination of the same witness the following occurred:

"Mr. Dannenbrink: Q. The issue narrows down, Mr. Wall, the way I understand it, to a dispute over the small marine ways, the large marine ways, the electric wiring and the incinerator? A. The incinerator out, because——

"Q. All right. You are making no claim to the incinerator, is that it? A. Not worth any, can't be used, it is a liability on the property."

■ Counsel for appellant then desisted from cross-examination concerning the incinerator and went on to the other matters. We are not holding that its yard superintendent, called as a witness by respondent, could waive a claim asserted by respondent. But here in the face of the witness' statements counsel for respondent remained silent. No objection was made to the question: "You are making no claim for the incinerator, is that it?" and when the witness answered in the affirmative counsel for respondent did nothing to disavow his action. We are satisfied that on the state of this record counsel for respondent by their conduct must be held to have acquiesced in the withdrawal of any claim to this item by their own witness who was at least a responsible employee, and that counsel for appellants were reasonably entitled to understand what had occurred as having that effect.

■ As to the three other items the court found that they were substantially, or in part constructively, affixed to the premises and were in fact fixtures. The evidence supports this finding. The two ways were attached to pilings driven into the mud below the water. They consist of "caps" with

rails on top of them attached by spikes. A cradle runs on the tracks which is attached to the winch by a cable. The winch is set in a concrete block and bolted to it. The testimony as to both ways was that the cradle and winch are essential parts of the ways which cannot be operated without them. The electric wiring is attached to power poles set in the ground and in places runs underground in conduits.

These articles fall well within the definition of Civil Code, section 660, as construed by the courts. In large part they were attached to the realty in a substantial manner. (*San Diego T. & S. Bank* v. *San Diego County*, 16 Cal.2d 142 [105 P.2d 94, 133 A.L.R. 416]; *City of Los Angeles* v. *Klinker*, 219 Cal. 198 [25 P.2d 826, 90 A.L.R. 148]; *Lavenson* v. *Standard Soap Co.*, 80 Cal. 245 [22 P. 184, 13 Am.St.Rep. 147]; *McKiernan* v. *Hesse*, 51 Cal. 594.) ■ It is also the rule that portions of equipment not attached to the realty but which are used with and essential to other portions attached to the realty constitute a unit and are constructively annexed. (*Southern Cal. Tel. Co.* v. *State Board of Equalization*, 12 Cal.2d 127 [82 P.2d 422].)

■ Appellants' main contention is that by the terms of the lease to Cann these properties were made personal property by agreement of the parties and that the lien of their chattel mortgage is therefore superior to any claim of respondent. The court found that the right of appellants to treat these articles as personal property had been lost by their not exercising it within a reasonable time. Herein the parties differ as to the respective rights in fixtures between the owner of the realty and the chattel mortgagee of a tenant who is given the right to remove the fixtures. ■ We may take it as settled in California that a tenant who is given the right to remove fixtures at the end of his occupancy must exercise this right within a reasonable time thereafter. (*Cone* v. *Western Trust & Sav. Bank*, 21 Cal.App.2d 176 [68 P.2d 981].)

Respondent asserts, and we think correctly, that the chattel mortgagee can get no greater rights than those possessed by the tenant-mortgagor. ■ The rule was well expressed in *Donahue* v. *Hardman Estate*, 91 Wash. 125 [157 P. 478], at page 480: "A mortgagee from a tenant has no greater right to remove trade fixtures from the premises after the tenant has surrendered possession to the landlord than the tenant himself would have. Whatever right or title the mortgagee from the tenant may have cannot rise higher than its

source, and is measured by what the rights of the tenant would be at the time the mortgagee asserts his claim." To the same effect are: *Couch* v. *Scandinavian-American Bank,* 103 Ore. 48 [197 P. 284, 287-288]; *Bush* v. *Havird,* 12 Idaho 352 [86 P. 529, 10 Ann.Cas. 107]; *Smith* v. *Park,* 31 Minn. 70 [16 N.W. 490]; *Free* v. *Stuart,* 39 Neb. 220 [57 N.W. 991]; *Sweet* v. *Myers,* 3 S.D. 324 [53 N.W. 187]; *Hughes* v. *Kershow,* 42 Colo. 210 [93 P. 1116, 15 L.R.A.N.S. 723]; *Talbot* v. *Whipple,* 14 Allen (Mass.) 177.

 Appellants assert that the rule in California is otherwise and that the lien of a chattel mortgage is superior to the landowner's title even though the tenant-mortgagor may have forfeited his right of removal by failure to exercise it within a reasonable time. They rely however on cases where the lien attached before the article was affixed to the realty. The distinction is clearly pointed out in *Martyn* v. *Hamilton,* 62 N.D. 445 [244 N.W. 15, 17]: "A mortgage taken with knowledge of the landlord's rights and that the machinery involved is a fixture is entirely different from a case where the landlord permitted mortgaged machinery to be affixed to his building."

Appellants assert however that *Stewart* v. *Leasure,* 12 Cal. App.2d 652 [55 P.2d 917] squarely supports their position. The opinion is ambiguous. It refers to the property involved both as "personal property" and as "fixtures." The court treated the case as one of opposing liens of which that of the chattel mortgage had priority. This is consistent with the rule above stated if the property was in fact personal property. We cannot regard the case as controlling on the fact situation in the case before us.

It would fly in the face of logic to hold that a tenant can convey to another by way of grant, assignment, mortgage or otherwise greater rights than the tenant himself has in the property. The court in its opinion on rehearing in *Bush* v. *Havird, supra* (86 P. 529, at p. 531) expressed this clearly: "It should be borne in mind . . . that the lessee of the premises cannot enter into any agreement by way of mortgage or otherwise with a stranger, to which his landlord is not a party, that will in any way diminish or affect the rights of the landlord, or give the mortgagee any rights or privileges superior to those enjoyed by the tenant."

Since Cann's right to remove this property must, under his lease contract with respondent, be exercised within a reasonable time after the termination of the lease the mort-

gagee's rights were necessarily subject to the same limitation.

This brings us to appellant's final argument. They assert that their time to enforce their mortgage lien was extended by the fact that in the lease to Peterson it was agreed between respondent and Peterson that this property should be regarded as personal property and the right was given to Peterson to remove it at the termination of his lease, and that in any event they acted within a reasonable time because of intervening litigation in which the title to this property was in issue.

On the first point the trial court found that it is not true that respondent entered into any agreement extending or recognizing any rights of Cann or appellants in this property or extending the time for its removal by them. We are satisfied that the record supports this finding.

Appellants' difficulty is that they must trace their interest through their mortgagor Cann. The right given to Peterson by the lease to him is one between Peterson and the respondent as his lessor and appellants fail to spell out how it in any way operated to extend Cann's right to remove this property, or any rights which they, standing in Cann's shoes, had acquired by their mortgage from Cann.

The final argument depends on these facts: On May 17, 1948, Ferro commenced a proceeding in the superior court entitled "In re Ferro as trustee and assignee for the benefit of the creditors of Bert Cann." It nowhere appears in the record that the respondent in this action was served in that proceeding or its title to this property therein put in issue. On November 4, 1948, involuntary bankruptcy proceedings were commenced in the United States District Court against Cann. If it be conceded that in the bankruptcy proceedings title to this property was in issue, a question which we need not decide, from November 1947 to November 1948, nothing prevented appellants from taking proceedings to enforce their chattel mortgage except their own voluntary agreement, to which respondent was not a party, to accept $60,000 in satisfaction of their claim, through the sale to Peterson and the voluntary proceedings in which Ferro was acting as trustee for Cann's creditors. This initial delay of one year is enough to support the trial court's finding that their lien upon the property was lost by failure to act within a reasonable time after Cann abandoned his lease. Whatever litigation oc-

curred thereafter is therefore immaterial since it could not revive a right already lost.

The judgment is reversed as to the incinerator with directions to include it in the decree of foreclosure. In all other respects it is affirmed. Appellants are allowed one-half of the costs of the transcripts on appeal against respondent, the parties otherwise to bear their own costs of appeal.

Nourse, P. J., and Kaufman J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 26, 1955.