[S. F. No. 19254.   In Bank.   Apr. 9, 1957.]

ITALO RINALDI et al., Respondents, v. ERNEST GOLLER, Appellant.

Morris Oppenheim for Appellant.

J. Horton Beeman and Royal E. Handlos for Respondents.

SHENK, J.—This is an appeal from a judgment for the plaintiff, in an action for declaratory relief, for overdue rent, and to quiet title.

On July 27, 1948, the plaintiffs entered into a lease of three vacant lots to the defendants Hamilton and Grays who were engaged in an automobile repair business. The lease was for a term of 10 years from that date. The lessees covenanted to pay rent at a monthly rate which was to increase in stated amounts and at specified intervals. The lease provided: ". . . if any rent shall be due and unpaid, or if default shall be made in any of the covenants herein agreed to be kept by the lessees, then it shall be lawful for the said

lessors, at their option, to terminate this lease and to re-enter the said premises and remove all persons therefrom."

On August 2, 1948, the lessees borrowed $4,000 from the defendant Goller to finance the construction of a garage on the leased premises. The loan was secured by a chattel mortgage on the building to be erected. The chattel mortgage was not recorded. The building was then constructed.

In 1951, the lessees left the premises. They did not return or repossess the property, nor were they ever seen again by the lessors. At the time they left they had paid only one year's rent under the lease.

On August 27, 1952, in an action in which the plaintiffs were not joined, the defendant Goller obtained a judgment of foreclosure on the chattel mortgage.

On October 3, 1952, the plaintiffs commenced the present action against Hamilton, Grays, and Goller. The complaint alleged three causes of action: the first for declaratory relief; the second for overdue rent from the lessees, and the third to quiet the plaintiffs' title to the premises. Hamilton and Grays defaulted, and their defaults were duly entered. Goller answered, denying, *inter alia,* that the plaintiff has ". . . any right, title or interest in or to the building which plaintiffs refer to and consider in said complaint as real property; and in that behalf this answering defendant alleges that as between all of the parties to this action was and is personal property." Goller further alleged that the chattel mortgage was a valid lien on the building apart from the realty and that the building was not a fixture.

The court found that the allegations of the plaintiffs' complaint were true and that the allegations and denials of Goller's answer were untrue. Judgment was entered for the plaintiffs on all three counts. Goller alone appealed and will be referred to as the defendant. The appeal is presented on a settled statement.

The defendant contends that the findings of the trial court do not support the judgment; that even if they are thus sufficient they are not supported by the evidence; that the judgment quieting the plaintiffs' title to the improvements is contrary to law, and that the chattel mortgage on the improvements and the judgment in the foreclosure action entitle the defendant to the improvements.

It is clear from a consideration of the record that the findings are supported by the evidence and that the findings in turn support the judgment. It remains to determine

whether the judgment granting the plaintiffs title to the improvements is legally supported.

 In *Simms* v. *County of Los Angeles*, 35 Cal.2d 303, 309 [217 P.2d 936], this court said quoting from *San Diego Trust & Sav. Bank* v. *County of San Diego*, 16 Cal.2d 142, 149 [105 P.2d 94, 133 A.L.R. 416], "It is settled that three tests must be applied 'determining whether or not an article is a fixture—namely: (1) the manner of its annexation; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention of the party making the annexation.' "

The statutory provisions are found in the Civil Code. Section 660 of that code provides: "A thing is deemed to be affixed to land when it is . . . permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws. . . ." At the time of the transaction here involved section 1013 provided: "When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as provided in section ten hundred and nineteen, belongs to the owner of the land, unless he chooses to require the former to remove it." Section 1019 provides: "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for the purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

 It cannot be said that the trial court erred in its determination that the building is realty and that the defendant Goller has no interest therein. The building, a structure 65 feet by 30 feet was erected on a concrete foundation. The interior of the building was floored in concrete. The building is of metal frame construction and is enclosed in corrugated iron. It does not appear how this metal building is attached to the foundation.  It is settled, however, that a building need not be physically anchored to the land to be considered realty. It may be found to be a fixture though it is secured to the realty by force of gravity alone. (*City of Los Angeles* v. *Klinker*, 219 Cal. 198 [25 P.2d 826, 90 A.L.R. 148]; *Southern Calif. Tel. Co.* v. *State Board of Equalization*, 12 Cal.2d 127 [82 P.2d 422].) ". . . in distinguishing permanence from transitoriness, it is not necessary to identify

it with perpetuality." (*Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385, 393 [175 P.2d 512].)

That the structure was necessary to the use of the property for the conduct of the automobile repair business may be readily implied from the facts. The trial court may reasonably have concluded that the building was essential to the use of the realty in the transaction of that business. (See *M. P. Moller, Inc.* v. *Wilson,* 8 Cal.2d 31, 38 [63 P.2d 818].)

Of the criteria which determine the classification of objects as fixtures the intention of the parties to the annexation is an important factor. In *Gosliner* v. *Briones,* 187 Cal. 557, 560 [204 P. 19], this court said ". . . the character of the annexation to the land or other realty and the use made of the property are important considerations, but in most cases are subsidiarily employed for the purpose of testing the intention of the parties."

The lease contains the following covenant relating to the intention of the parties: "At the expiration of said lease, and if there has not been and/or will not be another contract entered into, the Lessors have the option to purchase all improvements, provided the Lessees intend to sell."

The option clause contemplates purchase of the improvements by the lessor at the termination of the lease. By necessary implication, the alternative to the exercise of the option is the removal of the improvements at the end of the term.

The plaintiffs contend that even if an intention that the fixtures should be removable were implied, the default in the payment of rent and the lessors' re-entry for breach of condition forfeited any claim the lessees might have asserted under the lease. They argue that *Lawrence* v. *Knight,* 11 Cal. 298, and *Toellner* v. *McGinnis,* 55 Wash. 430 [104 P. 641, 24 L.R.A.N.S. 1082], conclude the case in their favor. Both of these cases involved an attempt by a defaulting lessee to enforce a covenant to purchase improvements against the lessor. Both held the covenant unenforceable in behalf of a defaulting lessee as against the innocent lessor. The present case is not an action by the lessee or chattel mortgagee who claims under him to enforce a covenant in the lease. The lease is here examined to determine the intention of the lessor and lessee with regard to the right of the removal of the improvements. The above cases are, therefore, not controlling. The plaintiffs' contention finds support in *Glaser* v. *North's,* 201 Ore. 118 [266 P.2d 680]. In that case, the Supreme Court of Oregon held that the abandon-

ment of leasehold premises upon default by the sublessee in the payment of rent to the lessee and the re-entry by the sublessor forfeited the sublessee's right to remove the fixtures. The fixtures were encumbered by a chattel mortgage executed by the sublessee to a third party. The right to remove the fixtures at or before the expiration of the sublease was expressly reserved to the sublessee. It was held that the abandonment of the premises by the sublessee and re-entry by the sublessor terminated the right of the sublessee to remove the improvements and consequently defeated the lien of the chattel mortgagee on the improvements. The court pointed out that a contrary holding would work an undue hardship on the sublessor. The court relied upon *Bush* v. *Havird,* 12 Idaho 352 [86 P. 529, 10 Ann.Cas 107], where the problem was analyzed as follows: ". . . Did the mortgagee or his assignees acquire any greater or superior rights to those of the tenant or mortgagor? We think there can be but one answer to that question. When the mortgagee took a mortgage on this property he took it subject to all the restrictions placed by law upon the tenant, who was the mortgagor, and he could acquire no rights greater than or superior to those of his mortgagor [citing cases]. When the tenant abandoned his right of removing this property and lost the possession and right to re-enter, that disability extended to his mortgagee with equal force and effect. The law will neither impose upon the landlord a duty nor necessity of either housing or taking care of the fixtures which his tenant leaves behind after his term has expired. Neither will the law permit the tenant nor anyone claiming under him, to re-enter the premises, for the reason that to do so would encourage breaches of the peace, and would in many cases hazard and impair the landlord's rights of leasing the premises to another tenant, and lessen the full and free enjoyment of those premises by such tenant."

The rights of the chattel mortgagee are derivative. He cannot assert a greater right against the lessor than can the lessees. "A mortgagee from a tenant has no greater right to remove trade fixtures from the premises after the tenant has surrendered possession to the landlord than the tenant himself would have. Whatever right or title the mortgagee from the tenant may have cannot rise higher than its source, and is measured by what the rights of the tenant would be at the time the mortgagee asserts his claim." (*Donahue* v. *Hardman Estate,* 91 Wash. 125, 128 [157 P. 478].)

If the lessees have lost the right to remove the fixtures, it follows that the right of the defendant Goller in the present case is similarly affected. (*United Pacific Ins. Co.* v. *Cann,* 129 Cal.App.2d 272 [276 P.2d 858]; *Glaser* v. *North's, supra,* 201 Ore. 118; *Donahue* v. *Hardman Estate, supra,* 91 Wash. 125; *Shelton* v. *Jones,* 66 Okla. 83 [167 P. 458, L.R.A. 1918A 830]; 14 C.J.S., Chattel Mortgages, § 33, p. 642; 22 Am.Jur., Fixtures, § 43, p. 756; 11 R.C.L., Fixtures, § 16, p. 1072.)

■ Furthermore, the removal of the building would deprive the lessors of a part of the consideration for the lease. The lease gives the lessors an option to buy the improvements at the end of the term. Removal of the building years before the expiration of the term would, therefore, deprive the lessors of a benefit of their bargain. To require the lessors to exercise the option before the expiration of the term of the lease would force a new agreement upon the parties, and require the lessors, if they chose to exercise the option, to pay a price which would not reflect the substantial diminution in value which ten years' depreciation might produce.

In *Whipley* v. *Dewey,* 8 Cal. 36, 39, this court said: "It is well settled that a tenant cannot remove erections, made by him on the premises, after a forfeiture or re-entry for covenant broken. Admitting the defendant had agreed to allow the plaintiff to remove, after expiration of the lease, the intention of the parties must be confined to the legal expiration thereof, by its own limitation, and not by the wrongful act of lessees terminating the same. The consideration of the contract . . . was the lease, and the plaintiff, having voluntarily or illegally terminated the same, ought not be allowed to set up a right under the contract."

The cases which give the lessee a reasonable period of time after the termination of the lease to remove improvements have involved the exercise of express, bargained for, agreements relating to the right of removal. (See *Earl* v. *Kelly,* 21 Cal.App. 480, 484 [132 P. 262]; *Cone* v. *Western Trust & Savings Bank,* 21 Cal.App.2d 176 [68 P.2d 981]; *Clark* v. *Talmadge,* 23 Cal.App.2d 703 [74 P.2d 825].) ■ In the absence of plain language in the lease as to the status of the property before the expiration of the term, or upon wrongful termination of the lease, general rules of law should govern. They require removal during the continuance of the term as a condition to the right of removal. (6 A.L.R.2d 322, 330 *ff.*)

■ The trade fixtures provision of Civil Code, section

1019, is not here applicable. That section permits the tenant to remove trade fixtures during the term of the lease. Here the lease had been terminated because of covenant broken and the right of re-entry had attached and had been exercised.

The judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

Appellant's petition for a rehearing was denied May 8, 1957.