[Civ. No. 9301. Third Dist. Apr. 3, 1958.]

MARJORIE L. COFFILL, Plaintiff and Appellant, v. LEWIS H. BACH et al., Defendants; MAZIE WOOL-STENHULME, Cross-complainant and Appellant.

William C. Coffill for Plaintiff and Appellant.

C. Ray Robinson, James A. Cobey and William J. Adams for Cross-complainant and Appellant.

SCHOTTKY, J.—In the year 1907 one T. H. Carlon entered into a contract of sale with one E. A. Wiltsee whereby Carlon agreed to sell Wiltsee 320 acres of land known as Stone Meadows and 480 acres of land known as Ackerson Meadows. In 1908 Carlon conveyed the land to Wiltsee. The deed provided that it was made and executed subject to the terms and conditions of an agreement executed by T. H. Carlon, dated December 9, 1907. The agreement between Carlon and Wiltsee was never recorded and is now a lost instrument. In 1908 Wiltsee conveyed Stone Meadows and Ackerson Meadows to the Tuolumne Power and Light Company. This deed contained the following provision:

". . . This deed is made and executed subject to the terms,

conditions and covenants contained in a written agreement executed by Timothy H. Carlon . . . to E. A. Wiltsee for the sale of said land . . . dated the 9th day of December, 1907 and is the only agreement made in writing between said Timothy H. Carlon and said E. A. Wiltsee in said matter and this deed is accepted by the party of the second part [Tuolumne Power and Light Company] hereto subject to the terms and conditions of said agreement.''

In 1909 Carlon and Tuolumne Power and Light Company entered into an agreement which referred to the agreement of sale between Carlon and Wiltsee of December 9, 1907, and the deed of conveyance from Carlon to Wiltsee and the deed of conveyance from Wiltsee to Tuolumne Power and Light Company. The agreement then provided:

''. . . [A]nd whereas the said E. A. Wiltsee has executed a deed of the said property to the party of the second part [Tuolumne Power and Light Company] herein and whereas one of the considerations for the execution of said deed by the party of the first part [Carlon] to E. A. Wiltsee was that until the said E. A. Wiltsee should construct a dam upon said lands for storing waters, the party of the first part reserved the ownership of the surface of said lands for pasturage and farming with the right to any timber necessary for fencing said lands and for domestic use and for repair of buildings on said lands and when said dam shall have been completed the party of the first part will still have the right to pasture and farm any of said lands not covered with water and to the free use of any of the stored waters in said dam for use of his live stock and for domestic purposes. In the work of constructing said dam or dams the said E. A. Wiltsee should have the superior right to use said lands or any part thereof necessary to be used in the construction of said dams and to all timber on said lands, and the party of the first part to have the use of all buildings on said lands until said lands are covered with water from said dam.

''It is therefore, now hereby expressly agreed and stated that the party of the second part herein, to-wit:

''Tuolumne Power and Light Company has accepted said deed from E. A. Wiltsee with notice of the terms and conditions of said agreement as above stated, and hereby acknowledges and declares that all of said terms and conditions are binding upon it to the same force and extent as the same were binding upon E. A. Wiltsee.''

This agreement was signed by Carlon.

By mesne conveyances Stone Meadows became the property of an Eric J. Segerstrom. Marjorie Coffill is the successor to Segerstrom. Mazie Woolstenhulme is now the owner of Ackerman Meadows and is the successor in interest of any rights of T. H. Carlon in Stone Meadows. In 1951, while the estate of Segerstrom was in probate, a lumber company was permitted to cut and remove timber from a certain proposed road on Stone Meadows and the proceeds of the sale of the timber were placed in escrow.

Marjorie L. Coffill commenced the instant action against Bach, the escrow holder, and Mazie Woolstenhulme, setting up three causes of action in her complaint. The first cause of action was to quiet title to 320 acres of land commonly known and hereinafter referred to as Stone Meadows; the second was to have it declared that she was entitled to the moneys held in escrow resulting from the aforementioned sale of timber; and the third was for a declaration that she was the owner of the timber on said land and entitled to remove it.

Mazie Woolstenhulme filed an answer denying the material allegations of the complaint and also filed a cross-complaint in which she alleged that plaintiff's claims in the property adverse to her were without right, and seeking a declaration of the rights of the parties in the property in controversy.

Following a trial the court found that plaintiff and cross-defendant is the owner of Stone Meadows, together with all the timber now growing upon said lands or which may grow upon said lands in the future; that plaintiff and cross-defendant has the right to remove said timber subject to the laws, rules and regulations of the state of California governing the removal of timber from private lands; and also that plaintiff and cross-defendant has a right to construct a dam or dams upon said lands for the storing of water. The court found further that said lands are subject to, and the cross-complainant is the owner of, an easement to pasture and farm said lands and to take any timber necessary for fencing said lands, and for domestic use, and for the repair of buildings on said lands. The court found further that in the event that a dam is built upon said lands, the defendant and cross-complainant, Mazie Woolstenhulme, shall then have the free use of any of the stored water from said dam for watering of livestock and for domestic purposes, provided, however, that in the event that said dam is built upon said property, then the plaintiff and cross-defendant shall have a superior right to use any part or all of said lands necessary to be used in

the construction of said dam, and to all timber on said lands. The court found further that plaintiff is entitled to the sum of $3,629.42 held in escrow, resulting from the sale of timber, less the commission and expenses of the escrow holder.

Defendant and cross-complainant, Mazie Woolstenhulme, has appealed from the judgment entered in accordance with the aforesaid findings, and plaintiff and cross-defendant, Marjorie L. Coffill, has appealed from that portion of the judgment permitting Mazie Woolstenhulme to take timber for repair of buildings on said land and for domestic use and that portion decreeing that Mazie Woolstenhulme is the owner of certain buildings erected on the land.

### Appeal of Defendant and Cross-Complainant

■ Appellant Woolstenhulme first contends that the original deed from Carlon to Wiltsee conveyed only a conditional fee on a condition precedent. She contends that Stone Meadows was conveyed by Carlon for the purpose of building a power plant dam upon the property, and inasmuch as the dam has not been built the fee to Stone Meadows was not transferred by Carlon and remains in her as his successor in interest.. Appellant cites section 1110 of the Civil Code which reads: "An instrument purporting to be a grant of real property, to take effect upon condition precedent, passes the estate upon the performance of the condition." Appellant's argument appears to be based on the fact that the agreement spells out the rights of Carlon until the dam was constructed and the rights of Wiltsee during construction. It is further argued that since Carlon reserved ownership of the surface of the land he retained the surface rights including the timber until the dam was constructed.

The argument of appellant is ingenious but unconvincing. We agree with the interpretation of the trial judge that Carlon conveyed a fee to Wiltsee subject to the right of Carlon to use the property for certain purposes. ■ The law is favorable to the vesting of estates and consequently a stipulation in a conveyance will be construed, if possible, not to create a condition. (*Buttram* v. *Finley*, 37 Cal.App.2d 459 [99 P.2d 1093].) ■ There are no words of condition in the agreement. A reading of the agreement between Carlon and Tuolumne Power and Light Company which spells out the rights reserved to Carlon in the contract with Wiltsee indicates that Carlon was reserving the right to pasture cattle on the land until the dam should be constructed, and to pasture cattle on

the land not flooded after the dam was constructed, and the right to use timber for the repair of buildings and for fences. This interpretation is fortified by a subsequent admission of Carlon. One of the later grantees of Stone Meadows filed an action against Carlon in which it was alleged that Carlon had entered into an agreement with the complainant whereby Carlon had granted and assigned all of his rights in certain land to the complainant. It was further alleged that through an error the description of the land was omitted from the agreement and that the land intended to be described was Stone Meadows. The complainant asked that the instrument be reformed and that it be declared that Carlon had no interest in the property. In his verified answer to the complaint Carlon ''admits that plaintiff is the owner of the property described in plaintiff's complaint subject to the right of this defendant to use, possess, occupy and enjoy the possession and use of said property until such time that said lands are actually flooded with water for reservoir purposes.'' Carlon further alleged he was the owner of the following rights: ''The ownership of the surface for pasturage and farming with the right to any timber necessary for fencing the lands and for domestic use and for repair of buildings on the land until such time that a dam be constructed. . . .''

█ We do not agree with appellant's contention that since Carlon reserved ownership of the surface of the land he retained the surface rights, including ownership of the timber, until the dam was constructed. We think it is clear from the documents in the record and from the other evidence that Carlon conveyed the fee to Stone Meadows with the specific reservation of the use of the surface for pasturage and farming, with the right to use the timber for fencing, domestic use and for repair of buildings on the land. His rights and the rights of his successors were limited by the terms of this reservation. It is to be noted that the reservations specifically include the right to use timber for fencing and repairs, and it is reasonable to conclude that if Carlon had intended to reserve ownership in the fee or in the timber he would not have taken pains to specify the rights reserved.

### Cross-Appeal of Plaintiff and Cross-Defendant

█ In her cross-appeal plaintiff appeals from the portion of the judgment permitting defendant Woolstenhulme to take timber for the repair of buildings which were constructed on said lands after December 9, 1907, said buildings having been

constructed about the year 1942, and also from the portion of the judgment that the present buildings, consisting of a dwelling house, barn and corral, belong to defendant.

Plaintiff contends that by the terms of the reservation in the contract of 1907, the parties did not contemplate that new structures could be erected on the land, and that the right to repair was limited to structures in existence in 1907. Plaintiff argues that the general connotation of the word "repair" is to mend an old thing, not to make a new thing; to restore something; to restore to a sound state something which has become partially dilapidated, not to create something new. (*Realty & Rebuilding Co.* v. *Rea,* 184 Cal. 565, 576 [194 P. 1024] ; *Whalen* v. *Ruiz,* 40 Cal.2d 294, 300 [253 P.2d 457].)

However, it must be borne in mind that Carlon reserved the right to farm the land until a dam was constructed and the land was covered with water, and we believe that the right to farm the land would entitle Carlon to construct any buildings reasonably necessary. We think that the trial court was correct in concluding that the word "repair" applied to any structures on the land and was not limited to those in existence at the time of the agreement.

There is no merit in plaintiff's further contention that the court erred in determining that the present buildings on the land belong to defendant. As has been hereinbefore pointed out, these buildings were constructed for use in exercising the right reserved by Carlon for pasturage and farming. We agree with cross-respondent's contention that the house, barn and corral were not intended to become part of the real estate, but instead were intended to remain the personal property of cross-respondent.

"Of the criteria which determine the classification of objects as fixtures the intention of the parties to the annexation is an important factor. In *Gosliner* v. *Briones,* 187 Cal. 557, 560 [204 P. 19], this court said '. . . the character of the annexation to the land or other realty and the use made of the property are important considerations, but in most cases are subsidiarily employed for the purpose of testing the intention of the parties.' " (*Rinaldi* v. *Goller,* 48 Cal.2d 276, 280 [309 P.2d 451].)

Such intention (that the house, barn and corral should not become part of the real estate) could be inferred from the testimony of cross-respondent that when the tenant who built the house, barn and corral gave up possession of the land, he left the buildings on it and cross-respondent then

got the buildings back. Such intention could further be inferred from the fact that when the buildings were built, the documents delineating the respective interests of the parties in this land indicated that cross-appellant's predecessor had a right to flood the land; thus it would reasonably be inferred that the party constructing the buildings should intend to have the right to move the buildings to another location on the land, or remove them from the land in the event of flooding.

The trial court's conclusion and judgment in this matter is that the present buildings, consisting of a dwelling house, barn and corral, located on Stone Meadows, belong to cross-respondent. Such conclusion and judgment are fully supported by the finding that said buildings are a reasonable and necessary incident to cross-respondent's rights in Stone Meadows. Implicit in such conclusion and judgment is a finding that the house, barn and corral were not intended to and did not become part of the real estate.

No other points raised require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.