**In the Matter of Ernest Clayton FRENCH, Bankrupt.**

**No. 27316.**

United States District Court, E. D. Tennessee, N. D.

Jan. 14, 1970.

James H. Jarvis, Knoxville, Tenn., for creditor.

Ralph D. Longmire, Knoxville, Tenn., for bankrupt.

Leon Steinberg, Knoxville, Tenn., trustee.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This case involves a petition to review an order of the bankruptcy referee. 11 U.S.C. § 67(c). Petitioner contends that the referee erred in disallowing his claim as a secured creditor.

The parties to the financing agreement intended that petitioner retain a security interest in service station equipment sold to the bankrupt. The financing statement filed with the Secretary of State was incomplete [1] because it did not contain the address of either the debtor or secured party.

On the authority of Strevell-Paterson Finance Co. v. May, 77 N.M. 331, 422 P. 2d 366 (1967) and In re Smith, 205 F. Supp. 27 (E.D.Pa., 1962), the referee held that these errors were not minor and did not "substantially comply" [2] with the formal requisites of the Uniform Commercial Code. He was of the opinion that the names of the parties would not be sufficient identification for notice filing, and that the system contemplated by the Code would be disrupted.

---

1. "47-9-402. *Formal requisites of financing statement—Amendments.*— (1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned and the name of the record owner thereof. A copy of the *security agreement* is sufficient as a financing statement if it contains the above information and is signed by both parties." Tenn.Code Annot.

2. Tenn.Code Annot. "47-9-402 * * * "(5) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

Petitioner's attorney stated in oral argument that any mistake in the filing was his responsibility; that he was under the misunderstanding that the entire financing agreement (which stated both parties were of Knoxville) recorded by the Knox County Register would be filed at the central filing location in Nashville. Instead, only the state form and an attached sheet showing the collateral subject to the lien were filed.[3]

In oral argument petitioner's attorney stated that he wrote the Secretary of State for information about the bankrupt pursuant to Tenn.Code Annot. § 47–9–407 "Information from filing officer." Exhibits attached to his supplemental brief show the exact information sought and received from the Secretary. They show that petitioner (no address is given) and a second creditor were engaged in financial arrangements with the bankrupt. Counsel asserts that this information shows that the notice provisions are satisfied and that there is no prejudice to creditors by this discrepancy.

The Court is unable to find any prejudice to creditors. It is admitted that none of the general creditors made inquiry of the Secretary to ascertain what property of the bankrupt was subject to any liens. Invalidating petitioner's security interest would create a windfall for the general creditors solely because of this slight dereliction. This would be an unjust result. The failure to include the addresses would, at most, have inconvenienced a creditor.

In applying Connecticut law to hold that an improper signature was only a minor error, the Second Circuit (Medina, J.) stated:

> "It is easy to understand why in the earlier period before the adoption of the Uniform Commercial Code there were so many decisions of courts holding seemingly trifling discrepancies and omissions to be defects fatal to

the security interests of conditional vendors. The basic reason for these holdings was the fact that the vendee had open possession of the personal property involved and there was nothing attached to or marked upon the articles to give a prospective creditor or other interested person notice that the person in possession held subject to a security interest in someone else. Cf. Benedict v. Ratner, 1925, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991. It was perhaps thought that, under these circumstances, it was perfectly fair to require rigid adherence to statutory requirements and not permit even the slightest deviation. A notorious example, specifically disapproved by the Code, is General Motors Acceptance Corp. v. Haley, 1952, 329 Mass. 559, 109 N.E.2d 143. For exhaustive, and amusing, lists of similar cases, see Coogan, Public Notice Under the Uniform Commercial Code, 47 Iowa L. Rev. 289, nn. 5, 82, 86 (1962); Note, 50 Cornell L.Q. 128, 130, n. 29 (1964).

> "In the light of modern conditions, however, the joint efforts of the American Law Institute and the National Conference of Commissioners on Uniform State Laws disclosed substantial disagreement with what was described in the Official Comment to Section 9–402(5) as 'fanatical and impossibly refined reading of * * * statutory requirements in which courts have occasionally indulged themselves.' Cf. Coogan, supra, at 319–320. The result was the scrapping of the old statutory scheme, which varied from State to State, and the substitution for it of the filing of a simple notice the purpose of which is only to 'give the minimum information necessary to put any searcher on inquiry.' The Official Comment concluded: 'Technical requirements are eliminated, pitfalls are avoided.'

---

3. Cf. Alloway v. Stuart, 385 S.W.2d 41 (Ky., 1964) where the omission of the creditor's signature was held substantial compliance because of *inter alia*, the novelty of the Code. The Code became effective in Tennessee at midnight on June 30, 1964. Compiler's notes to Tenn. Code Annot. § 47–1–101. The questioned statement was filed on May 28, 1969.

"To effectuate this purpose, and in the spirit of liberality and substantial justice so often expressed by Professor Karl N. Llewellyn, the Chief Reporter of the Code, there was included in the very Section of the Code that enumerates the formal requisites of the notice, which we have already quoted in full, the following Subdivision (5) that we think is dispositive of this case:

'A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.'"

In re Excel Stores, Inc., 341 F.2d 961, 963, 964 (1965)

Applying Wyoming law, the Tenth Circuit declined to set aside a security interest because the addresses of the parties were not included. Rooney v. Mason, 394 F.2d 250 (1968).

Application of whatever authority there may be to the contrary would not reach a proper result. The Court, therefore, holds that petitioner's financing statement is valid, and he is a secured creditor of the bankrupt.