[Civ. No. 13387. Fourth Dist., Div. Two. Mar. 15, 1974.]

GENERAL ELECTRIC CREDIT CORPORATION,
Plaintiff and Respondent, v.
AURORA MOBILE HOMES, INC., Defendant and Appellant.

## COUNSEL

Clayson, Stark, Rothrock & Mann and Albert J. Wojcik for Defendant and Appellant.

Sheppard, Mullin, Richter & Hampton and Finley L. Taylor for Plaintiff and Respondent.

## OPINION

**TAMURA, J.**—The sole issue on this appeal is whether a financing statement filed by plaintiff (GECC) pursuant to Commercial Code section 9402 was sufficient to perfect its security interest in a mobile home.

On November 18, 1970, GECC entered into a security agreement with Landes Enterprises, Inc., dba Landmark Mobile Homes (Landes), pursuant to which it acquired a security interest in, among other items, "All inventory new and used, presently owned and hereafter acquired . . ." by Landes. On December 7, 1970, GECC filed a financing statement with the Secretary of State whose office recorded and indexed the statement under Landes Enterprises, Inc., 5382 Mission Boulevard, Riverside, California. The statement was signed by Landes and GECC, gave the mailing addresses of both parties and gave Landes' trade name, thus fulfilling all of the requirements of Commercial Code section 9402[1] except for supplying the address of the debtor's chief place of business.

On or about April 30, 1971, defendant Aurora Mobile Homes, Inc. (Aurora) shipped a mobile home bearing identification number 2038 to Landes. The mobile home became part of the inventory at a lot run by

---

[1]Commercial Code section 9402, subdivision (3), provides:
"(3) A form substantially as follows is sufficient to comply with subdivision (1):

### "FINANCING STATEMENT

"Name of debtor . . . . . . . . . . . . . . . . . .
"Mailing address of debtor . . . . . . . . . . . . . . . .
"Name of secured party . . . . . . . . . . . . . . . .
"Mailing address of secured party . . . . . . . . . . . . . . .
"Address of debtor's residence (if an individual) . . . . . . . . . . .
 and address of his chief place of business (if any) . . . . . . . . . .
"Address of chief place of business of debtor (if an
 organization) . . . . . . . . . . . . . . . . . . . . . .
"The debtor is doing business under the following trade
 name or style . . . . . . . . . . . . . . . . . . . .
"(1) This financing statement covers the following types
 (or items) of property: (description of collateral)
"(2) (If collateral is crops or timber) The above
 described crops or timber are growing or are to be
 grown on or are standing on: (description of real
 property)
"(3) (If proceeds or products of collateral are claimed)
 (Proceeds) (Products) of the collateral are also
 covered
"Date: _____ 19__

 Signature of debtor
 Signature of secured party"

Landes in Montclair. Landes had some six sales lots in various parts of the state. Prior to the sale of the mobile home, Aurora made no search at the Secretary of State's office for financing statements signed by Landes. Nor did it perfect a security interest of its own.

When Landes encountered financial difficulties in August 1971, GECC liquidated Landes' inventory, selling mobile home number 2038 to Mission Mobile Homes, Inc. (Mission), of Santa Cruz, California. Aurora learned of the sale, removed the mobile home from Mission's lot, transported it to Riverside, and subsequently sold it.

GECC brought the present suit against Aurora to recover damages for conversion of the mobile home, damages for intentional interference with a business relationship between GECC and Mission, and punitive damages. Aurora answered and cross-complained for expenses incurred in recovering the mobile home and for the depreciation in the mobile home's value.

Both Larry Kuhlmann, GECC's district manager, and Jack Spencer, field project superintendent and vice president of Aurora, testified that at the time the security agreement was executed and the financing statement was filed, Landes' chief place of business was the same as its mailing address, 5382 Mission Boulevard, Riverside, California. Jack Spencer was an officer and stockholder of Landes until December 1970.

The trial court found that at all times during the period from December 7, 1970, to April 30, 1971, the address of Landes' chief place of business was 5382 Mission Boulevard, Riverside, California. The court concluded that the financing statement filed by GECC was in substantial compliance with Commercial Code section 9402 and gave GECC a valid perfected security interest in Landes' inventory. Judgment was entered in favor of GECC against Aurora for $16,708.48, plus interest and costs. It was further adjudged that Aurora take nothing on its cross-complaint. Aurora appeals from the judgment.

Aurora's sole contention on appeal is that the financing statement filed by GECC was invalid in that it did not contain the debtor's chief business address.

Section 9402 of the Commercial Code sets forth the formal requisites of a financing statement. Subdivision (5) reads as follows: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." The Uniform Commercial Code comment accompanying this

subdivision states that subdivision (5) is in line with the policy of the code to simplify formal requisites and filing requirements and "is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves."

Apparently the only case to apply California's substantive law to the question of the sufficiency of an address in a financing statement is *Lines* v. *Bank of California* (9th Cir. 1972) 467 F.2d 1274.[2] The court held that the financing statement substantially complied with the provisions of section 9402, even though the space for the debtor's residential address had been left blank. The mortgaged property consisted of machinery and equipment located at the debtor's chief place of business, the address given in the financing statement. In its opinion, however, the court observed that in the circumstances the residence address was not important, "as it might have been if the mortgaged property had been located at the residence address." (*Lines* v. *Bank of California, supra,* at p. 1275.) Aurora interprets this language to mean that a debtor's chief place of business would be of critical importance. The statement, however, was only dicta, and other considerations convince us that in the case at bench, the lack of the address of the debtor's chief place of business did not render the financing statement invalid.

Aurora also relies on *In re Smith* (E.D.Pa. 1962) 205 F.Supp. 27, to support the proposition that the statement was invalid. *Smith* said that a financing statement which did not include the debtor's *mailing* address was defective.[3] Since the financing statement is indexed in the Secretary of State's office according to the name and *mailing* address of the debtor (see Com. Code, § 9403, subd. (4) (a) ), the mailing address is of more critical importance than the address of the debtor's chief place of business.

In the instant case the financing statement was correctly indexed by the Secretary of State's office under Landes Enterprises, Inc., 5382 Mission

---

[2] The Court of Appeal for the First District considered the validity of a bank's financing statement which listed a debtor by its trade name, rather than its corporate name. In upholding the bank's security interest, the court noted that a standard search of the Secretary of State's files would have disclosed the financing statement, and therefore the statement had served the purpose of alerting future creditors to the existence of a security interest. (*Borg-Warner Acceptance Corp.* v. *Bank of Marin,* 36 Cal.App.3d 286 [111 Cal.Rptr. 361].)

[3] The parties in *Smith* erroneously assumed that the debtor's mailing address was missing. Later it was discovered that the address was in fact contained in the financing statement, and the case was remanded for further consideration. Defendant is thus relying on dicta by the court.

Boulevard, Riverside, California. Under the "notice filing" system adopted by the California Commercial Code, the financing statement merely indicates that the secured party who filed may have a security interest. The security agreement itself will normally be evidenced in another written document containing a great deal more than the notice required by section 9402. Had Aurora checked the records in the Secretary of State's office, it would have learned that a security agreement was in effect between GECC and Landes as of December 7, 1970, covering Landes' future acquired inventory. Failure of a creditor to inspect financing statements on file is a factor to be considered in determining whether a defective statement ought to be considered invalid. (*In re French* (E.D.Tenn. 1970) 317 F.Supp. 1226.)[4]

If Aurora had examined the financing statement on file, it would have been put on notice that GECC claimed a security interest in Landes' inventory. It could have made further inquiries of the parties, using the addresses supplied for them, to determine the extent of the security interest and the number of lots on which future acquired inventory was being displayed. If the 5382 Mission Boulevard, Riverside, California address was listed as the debtor's chief place of business, as the trial court found it to be, it would still have been incumbent upon Aurora to inquire on which lots the after-acquired inventory was located in order to protect itself from GECC's security interest. For under the floating lien arrangement of financing authorized by the code, the inventory in which GECC had a security interest is considered as a mass everchanging in form. The security interest floats over and along with this mass and as the debtor receives an interest in new goods, the floating lien attaches to those goods. (*Owen* v. *McKesson and Robbins Drug Company* (N.D.Fla. 1972) 349 F.Supp. 1327, 1332.)

[4] Aurora argues that if it had looked for any financing statement on file under Landes' name, it would have found several financing statements with Landes as debtor and GECC as the secured party, each giving a different address as the debtor's chief place of business but none mentioning the Montclair address. Since the Montclair lot was only listed on a statement filed by Riverside National Bank, so the argument goes, Aurora could logically have concluded that mobile home number 2038 on the Montclair lot was not covered by a security agreement with GECC. The foregoing argument is premised on material which was not introduced at trial or otherwise properly received as evidence. The record discloses that following submission of the matter on April 12, 1973, Aurora submitted "Supplemental Evidence" consisting of a number of financing statements in which Landes was listed as debtor. According to Aurora, the trial judge indicated that the parties were permitted to submit any additional evidence at any time before the court's decision. The record, however, discloses that the court decided the case on April 17, 1973. The request to consider the "Supplemental Evidence" is dated May 2, 1973, sometime after the court's notice of intended decision.

In *Rooney* v. *Mason* (10th Cir. 1968) 394 F.2d 250, the Tenth Circuit held that a financing statement was valid even though there was no address given for the debtor since the address was readily known to virtually all creditors. (See also *In re French, supra,* 317 F.Supp. 1226.) In the case at bench, an officer of Aurora was at one time also an officer and stockholder of Landes. He knew that Landes' chief place of business was 5382 Mission Boulevard in Riverside and that GECC was providing financing for Landes.

As pointed out by the court in *In re Little Brick Shirthouse, Inc.* (N.D. Ill. 1972) 347 F.Supp. 827, 829-830, the provision calling for the listing of a business address was not intended for the purpose of restricting the security interest to the inventory found at that address; it is merely a mailing address at which information may be obtained. Thus GECC could have listed any of Landes' lots in the blank for chief place of business, and inventory in other lots might still have been covered by the agreement if it had been acquired after the security interest was perfected.

In recognition of the fact that the primary purpose of the address on financing statements is to enable interested persons to obtain information about the security interest, the Secretary of State's office does not reject a statement offered without both the debtor's mailing and residence address filled in, as long as at least one of the following complete street addresses is given: (1) The debtor's mailing address, (2) the debtor's residence address, or (3) the address of the debtor's chief place of business. (See Cal. Commercial Law III (Cont.Ed.Bar) § 5.10.)

The criterion for determining whether a financing statement substantially complies with the requirements of section 9402 notwithstanding minor errors is whether the errors are "seriously misleading." (Com. Code, § 9402, subd. (5).) Considering the purpose to be served by a financing statement and the fact that Aurora has not shown that it was misled by the defect in GECC's statement, we conclude that the statement was effective and that GECC did have a perfected security interest in the mobile home in question.

Judgment is affirmed.

Kerrigan, Acting P. J., and Kaufman, J., concurred.