[L.A. No. 30447. In Bank. Sept. 26, 1975.]

MALCOLM GOLDIE, Plaintiff and Respondent, v.
BAUCHET PROPERTIES et al., Defendants and Appellants.

308

**COUNSEL**

Pick, Miller & Froehlich and David Pick for Defendants and Appellants.

Morgan D. Goldie for Plaintiff and Respondent.

**OPINION**

**SULLIVAN, J.**—In this action for possession of property we are called upon to resolve conflicting claims to a packaging machine installed by lessees on leased premises. Our task requires us to determine whether the claim of a security interest in the machine asserted by plaintiff-creditor of the lessees or the claim of defendant-lessors in the machine based upon certain provisions of the lease has priority. The trial court adjudicated priority in favor of plaintiff. Defendants appeal.

Henry Kermin owned real property on Bauchet Street in Los Angeles. For several years, through two corporations[1] of which he was the sole shareholder, he operated a frozen food business on the premises. On November 3, 1966, Kermin sold the real property to David Pick, one of the defendants, and Sam Mesler and their wives. On the same date, the buyers leased the property to the two Kermin corporations for a term of 20 years. The lease was not recorded. Subsequently Pick and Mesler formed Bauchet Properties, a limited partnership, to which they conveyed the real property and assigned the lease.

At the time of the sale and the lease one of the Kermin corporations owned and was using in the frozen food business an automatic packaging machine, which was bolted to the cement floor. Under the terms of the lease, the lessors were given a security interest in all trade fixtures and equipment on the premises, but the lessees were allowed to trade in and replace any such articles of property during the term of the lease[2] and remove them upon termination of the lease,[3] providing the lessees were not in default.

[1]Kermin Frozen Food Co., Inc. and Kermin Frozen Food Sales Co.

[2]Article V, subdivision (b), of the lease provides as follows: "As additional security for the faithful performance by Lessee of all of the terms, covenants, and conditions of this Lease by said Lessee to be kept and performed during the term hereof, Lessee hereby grants to Lessor a security interest in all its fixtures, machinery, equipment, furniture, furnishings, and the proceeds therefrom presently owned by Lessee and located at said demised premises and all after acquired property of the same class and description. However, while Lessee is not in default in the payment of rent or any of its obligations under this Lease, it may trade in or replace any of said items free of this security interest and the security interest shall then apply to the newly acquired items. This security interest shall also be subordinate to the lien of any security interest hereafter given to any lending institution as security for a bona fide business loan to Lessee. Upon the default in the performance of any of the obligations of Lessee as provided in Article XVIII, Lessor shall immediately have the remedies of a secured party under the Uniform Commercial Code."

[3]Article XII, subdivision (b), of the lease provides as follows: "All trade fixtures, equipment and other like property which the Lessee has installed in or attached to the building or improvements located upon the demised premises, provided the removal of the same shall not structurally injure the building or improvements, shall remain the property of the Lessee, subject to Lessor's security interest, and the Lessor agrees that the Lessee shall have the option at any time, and from time to time, provided the Lessee is not then in default in the performance of any of the obligations of the lease on its part to be performed to trade in or replace any and all of its trade fixtures, equipment, and other like property which it may have installed in the building or improvements, and upon the termination of the lease, to remove same, provided that upon such trading in, replacing or removing the Lessee shall restore and repair any damage occasioned thereby to the building and improvements, and further provided that if Lessee be in default, it shall not then have any right of trading in, replacing or removing of such trade fixtures, equipment, and other like property which it may have installed. Nothing in this Article shall be deemed to permit the removal by the Lessee of any permanent type exterior or interior carrying walls, or permanent type floor coverings."

A little more than a year later on December 15, 1967, one of the above corporate lessees, Kermin Frozen Food Co., Inc. (see fn. 1, *ante*), borrowed $10,000 from plaintiff Malcolm Goldie and executed and delivered to plaintiff its demand promissory note in that amount with 10 percent interest per year payable in monthly installments due on the last day of the month and as security for payment of said note a security agreement (mortgage of chattels) granting plaintiff a security interest in the packaging machine located on the Bauchet Street premises. On February 23, 1968, plaintiff caused said security agreement to be filed with the Secretary of State.

On September 1, 1969, the corporate lessees defaulted in the payment of rent due defendants under the lease; on September 30, 1969, Kermin Frozen Food Co., Inc. defaulted in the payment of interest due plaintiff under the terms of the promissory note. On October 6, 1969, the corporations surrendered the premises, including the packaging machine, to Bauchet Properties. On November 25, 1969, plaintiff demanded possession of the packaging machine. Defendant Pick refused and plaintiff thereupon brought the instant action against Bauchet Properties and Pick for possession of the packaging machine and other relief. In order to avoid the expense of having the marshal remove the packaging machine pursuant to claim and delivery, Pick agreed to allow plaintiff to remove the packaging machine from the premises upon plaintiff's written acknowledgment that he was estopped from claiming to have been in peaceable possession of the premises at the time of removal.

The trial court, after finding the facts to be substantially as related above, concluded: that the packaging machine was a trade fixture, personal property and proper for use as collateral under a security agreement; that the security agreement was perfected; that the perfected security interest in the packaging machine prevailed over a prior unrecorded lease and therefore that plaintiff was entitled to possession of the machine. Judgment was entered accordingly. This appeal followed.

Defendants contend that the trial court committed prejudicial error in basing its decision on the California Uniform Commercial Code. They argue that the competing rights of the parties are to be determined according to general landlord-tenant law in existence prior to the enactment of the Commercial Code, that such code made no changes in the existing law and that it is not applicable in the instant case.

Since the trial court found on substantial evidence that the packaging machine was a trade fixture, we start by briefly reviewing the law of trade fixtures. "The California cases state a general proposition that the landlord will become owner of 'fixtures' affixed by the tenant to the land in the absence of countervailing circumstances. Civil Code section 1013 provides the statutory statement of the rule: 'When a person affixes his property to the land of another . . . the thing affixed . . . belongs to the owner of the land' unless (1) there is an agreement between the parties permitting the annexer to 'remove' the thing affixed, or (2) the case comes within Civil Code Section 1019, concerning the 'removability' of [trade] 'fixtures' by tenants." (Horowitz, *Fixtures in California* (1952) 26 So.Cal.L.Rev. 21, 40-45.)[4] Such "fixtures removable by tenants" are called "trade fixtures." (*Beebe* v. *Richards* (1953) 115 Cal.App.2d 589, 591 [252 P.2d 688]; Horowitz, *Fixtures in California, supra,* 26 So.Cal.L. Rev. 21, 42; 3 Witkin, Summary of Cal. Law (8th ed.) Personal Property, § 61, p. 1669; Real Property, § 469, p. 2153.) ■ Since the packaging machine was bolted into the concrete floor, was removable without injury to the premises and was used for purposes of trade or manufacture, it clearly was a "trade fixture."

■ Although "trade fixtures" are normally removable by the tenant upon termination of the lease, provisions to the effect that fixtures, including trade fixtures, will belong to the landlord on termination of the lease for breach by the tenant are valid and controlling. (*Bridges* v. *Cal-Pacific Leasing Co.* (1971) 16 Cal.App.3d 118, 128 [93 Cal.Rptr. 796]; see 3 Witkin, Summary of Cal. Law (8th ed.) Real Property, § 470, p. 2154.) ■ Where trade fixtures removable by the tenant under the terms of a lease are later encumbered by a chattel mortgage given to a third party, the "rights of the chattel mortgagee are derivative. He cannot assert a greater right against the lessor than can the lessees." (*Rinaldi* v. *Goller* (1957) 48 Cal.2d 276, 281 [309 P.2d 451].) Thus, if the tenant has lost his right to remove the fixtures, the right of the chattel mortgagee is similarly affected. (*Rinaldi* v. *Goller, supra,* at pp. 281-282; *Weisberg* v. *Loughridge* (1967) 253 Cal.App.2d 416, 426 [61 Cal.Rptr. 563]; *United Pacific Ins. Co.* v. *Cann* (1954) 129 Cal.App.2d 272, 275-276 [276 P.2d 858].)[5]

---

[4]Civil Code section 1019 provides: "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

[5]A different rule prevails where the fixtures installed by the tenant are owned by a third party and a landlord seeking to recover them under the terms of a lease must stand

■ Applying these principles to the facts of the instant case, we conclude that since at the time of the sale and lease the packaging machine was already affixed to the premises and since the corporate lessee granted plaintiff a security interest in the machine *after* the lease was entered into, plaintiff's right to the machine was derivative and he could assert no greater right against the lessors than could the lessees. Since the lessees, having defaulted in the payment of the rent lost their right to remove the machine from the premises under the terms of the lease, plaintiff's right to remove it under an assertion of his security interest was similarly affected.

Plaintiff argues that these principles have been superseded by the enactment of the California Uniform Commercial Code (Stats. 1963, ch. 819)[6] and that since he perfected his security interest by filing it with the Secretary of State (Cal. U. Com. Code, §§ 9303, subd. (1), and 9302) he prevails over defendants whose rights are based on an unrecorded lease. Defendants on the other hand maintain, as we have indicated previously, that an examination of section 9102, subdivision (1), subsection (c), makes clear that the code is not applicable to a situation such as the instant one involving the competing rights of a creditor of a lessee asserting a security interest in trade fixtures and of a lessor asserting an interest in such fixtures based on his interest as lessor of the premises.

It is convenient at this point to note that the Uniform Commercial Code with certain amendments was adopted in California at the 1963 Regular Session of the Legislature, becoming effective January 1, 1965. In California the adopted code is known as Uniform Commercial Code. (§ 1101.) While section 1101 of California's Uniform Commercial Code provides that the code may be cited as the Uniform Commercial Code, good citational practice requires the addition of the prefix "California" to distinguish the California code from the Uniform Commercial Code prepared and sponsored nationally and which uses somewhat similar numbering. Section numbers of California's code correspond to those of the Uniform Commercial Code except that the dash appearing in the

---

in the shoes of the tenant. (*Hendy* v. *Dinkerhoff* (1880) 57 Cal. 3, 6-7.) Thus on the same principle, where the tenant purchases articles of personal property on a conditional sales contract and affixes them to the leased premises, the landlord asserting rights under a lease stands in no better position than his tenant and cannot prevail against the conditional vendor unless his tenant could have prevailed. (*EAC Credit Corp.* v. *Bass* (1971) 21 Cal.App.3d 645, 651-654 [98 Cal.Rptr. 681]; *Best Manufacturing Co.* v. *Cohn* (1906) 3 Cal.App. 657, 659-660 [86 P. 829]; see *Hendy* v. *Dinkerhoff, supra.*)

[6]Hereafter unless otherwise indicated all section references are to the California Uniform Commercial Code.

section numbers of the latter has been removed. Thus section 3-101 of the Uniform Commercial Code becomes 3101 of the California Uniform Commercial Code. (See fn. 6, *ante.*)

Section 9-102, subdivision (1), subsection (a), of the Uniform Commercial Code provides in pertinent part that article 9 of that code applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures . . . ." Section 9-313 of that code establishes the rules for determining the priority of security interests in fixtures. When California adopted the Uniform Commercial Code it deleted the reference to fixtures in section 9-102, subdivision (1), subsection (a), deleted section 9-313, and added subsection (c) to section 9-102, subdivision (1).

Division 9 of the California Uniform Commercial Code concerns secured transactions (§ 9101). Section 9102, subdivision (1), provides in pertinent part that with exceptions not here applicable division 9 "applies so far as concerns any personal property and fixtures within the jurisdiction of this State (a) To any transaction (regardless of its form) which is intended to create a security interest in personal property including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; . . . and also (c) To any transaction (regardless of its form) which is intended to create a security interest in goods which are or later become 'fixtures' under the law of this State, but as against third parties having or acquiring an interest in or a lien on the real property, the rights and duties of the parties to the secured transaction are governed by the law of this State relating to real property and fixtures."

The effect of section 9102, subdivision (1), subsection (c), is threefold: (1) security interests in "fixtures" are governed by the code; (2) competing claims between the holder of a security interest in "fixtures" and the holder of an interest in real property upon which "fixtures" have been installed are governed by the law of real property and fixtures and not by the code; and (3) the question whether "goods are or later become 'fixtures' " (§ 9102, subd. (1) (c)) is determined by California law independent of the code. "The California draftsmen apparently intended Division 9 to govern the creation, perfection and priority of security interests in fixtures as against parties claiming interests in the fixtures themselves and not in the real property. . . . Hence the code governs as between one with a security interest in a fixture and anyone other than a real property claimant. But the rights of

parties with claims in fixtures as against parties with claims in the real estate are left to real property law." (3 Cal. Commercial Law (Cont. Ed. Bar 1966) § 1.9, pp. 11-12.)

In the case at bench, as we have explained, we conclude that under general California law the packaging machine is a trade fixture. However the Commercial Code makes no reference to goods which are "trade fixtures." Section 9102, subdivision (1), subsection (a), refers to goods which are "personal property" and section 9102, subdivision (1), subsection (c), refers to goods which are "fixtures." ▮ Under California law, the classification of an object as a "fixture" or as "personal property" is not a factual description of the object, but a statement of a legal conclusion or result as to entitlement to the object. The following excerpt from a report made to the Senate Fact Finding Committee in connection with its consideration of the adoption of the Uniform Commercial Code in California is illuminating: "[W]e believe that the basic characteristic of this field of law [fixtures] can be stated rather simply: It is that the courts attach the label 'fixtures' to an object when they have decided that the owner of an interest in the land should prevail, and they attach the label 'personalty' or 'non-fixture' to an object when they have decided that the owner of an interest in the object apart from the land should prevail; and they may attach both labels to exactly the same object in different circumstances, depending upon the position and equities of the contesting parties. In other words, the determination that an object is a 'fixture' is not a factual classification but a statement of a legal conclusion." (Report of Professors Marsh and Warren to the Senate Fact Finding Committee, 1 Appendix to Sen. J. (1961 Reg. Sess.) pp. 577-578.)

The legal conclusion "trade fixture" means that the goods so denominated will be treated as personal property, i.e., that the tenant may remove the goods upon termination of the lease (3 Witkin, Summary of Cal. Law (8th ed.) Real Property, § 469, p. 2153.) ▮ Therefore, in the instant case the trial court quite logically determined that "trade fixtures" are "personal property" within the meaning of the California Uniform Commercial Code. However, as previously indicated, defendants assert that their interest in the packaging machine arises from their "interest in real property," in other words that as lessors under the provisions of the lease, they became the owners of the machine upon Kermin's default (see fn. 2, *ante*). Accordingly they argue that such interest is not governed by the California Uniform Commercial Code because of the exclusion provided for in section 9102, subdivision (1), subsection (c), of claims

based upon interests in real property. Section 9102, subdivision (1), subsection (c), however, applies only to "goods which are or later become 'fixtures' under the law of this state." "Trade fixtures" are goods determined not to be "fixtures" (see Horowitz, *Fixtures in California, supra,* 26 So.Cal.L.Rev. 21, 40-45) and thus apparently cannot come within the purview of section 9102, subdivision (1), subsection (c).

This raises a further problem, however, because the Legislature in deleting section 9-313 of the Uniform Commercial Code, deleting "fixtures" from section 9102, subdivision (1), subsection (a), and enacting section 9102, subdivision (1), subsection (c), made it clear that its purpose in so doing was to immunize from the reach of the California Uniform Commercial Code the rights of holders of interests not only in real property but thereby also in property affixed to it. (3 Cal. Commercial Law (Cont. Ed. Bar 1966) § 1.9, pp. 11-12; § 4.66, pp. 225-226; Note (1962) 37 State Bar J., p. 201; Report of Professors Marsh and Warren, *supra,* 1 Appendix to Sen. J. (1961 Reg. Sess.) pp. 577-578.) The Legislature apparently overlooked the fact that the rights of holders of interests in real property and thereby to property affixed to it, might be affected by security interests in "personal property" falling within section 9102, subdivision (1), subsection (a), since "trade fixtures," "removable fixtures," and objects affixed to real property which do not meet the three-part test set forth in *Rinaldi* v. *Goller, supra,* 48 Cal.2d 276, 279, are all treated as "personal property" under the law of this state.

This apparent gap in the effectuation of the Legislature's clear intention can be closed in one of two ways: (1) by reading back into section 9102, subdivision (1), subsection (a), the exception relating to real property interests provided in section 9102, subdivision (1), subsection (c); or (2) by interpreting the term "fixtures" in section 9102, subdivision (1), subsection (c) to mean goods affixed to real property regardless of whether as a result of their classification under the law of fixtures the affixed goods are treated as "personalty" or "realty." We conclude that the latter interpretation is more consonant with the legislative intent and we so construe section 9102, subdivision (1), subsections (a) and (c). ■ Thus, where, as here, there are competing claims between the parties—one party claiming a security interest in goods which are or later became affixed to real property and the other party claiming an interest in the goods based on his interest in the real property to which the goods are affixed—section 9102, subdivision (1), subsection (c) becomes operative and by virtue of its exclusionary provisions such competing claims must be determined according to the law of this state relating to real

property and fixtures and not according to the California Uniform Commercial Code.[7]

Therefore if defendants' interest in the packaging machine is *not* a security interest but an ownership interest derivative from their interest in the real property as owners and lessors under the express exclusionary provisions of section 9102, subdivision (1), subsection (c), the California Uniform Commercial Code should not govern and the rights and duties of the parties should be governed by the law of this state relating to real property and fixtures. In such event, as we have explained earlier, defendants should prevail. If, however, defendants have only a security interest in the packaging machine, then the code should govern and the rights and duties of the parties should *not* be governed by the law of this state relating to real property and fixtures. In such event, plaintiff's perfected security interest should prevail over defendants' non-perfected security interest. (§§ 9304, 9312.)

The trial court made no finding as to the nature of defendants' interest in the packaging machine and we are unable to determine its nature from the lease as a matter of law. It is clear that defendants had a security interest in the packaging machine under article V, subdivision (b) of the lease (see fn. 2, *ante*). However, article XII, which confirms defendants' security interest in trade fixtures, equipment and other like property, in addition provides: "if Lessee be in default, it shall not then have any right of trading in, replacing *or removing* of such trade fixtures, equipment, and other like property which it may have installed." (See fn. 3, *ante;* italics added.) This clause barring removal upon default does not necessarily derogate from a determination that defendants have merely a security interest in the machine, since it is reasonably susceptible of the construction that the lessees were prohibited from removing the machine in order to simplify defendants' enforcement of their security interest. On the other hand, it is also reasonably susceptible of the construction that upon the lessees' default the trade fixtures shall belong to defendants as lessors *independent* of ·any security interest they might have. ■ Because we cannot resolve this question as a matter of law,

[7]We construe section 9102, subdivision (1), subsection (c), in this manner solely for the purpose of resolving such competing claims. We emphasize that our above construction is so limited and is not intended, nor shall it be deemed, to extend to sections of the California Uniform Commercial Code prescribing the manner of perfecting security interests. (See § 9303 and related sections.)

and because the trial court has made no finding on this issue, we remand the cause to the trial court to determine this issue and make an appropriate finding. For this purpose, the trial court on remand shall receive such additional evidence, otherwise admissible, as may be offered by the parties or as deemed necessary or advisable by the court on its own motion. Except for the reception of evidence on this issue, we find nothing in the record which impels us to order a new trial.[8]

Defendants alternatively contend that even if the California Uniform Commercial Code is found to govern they nevertheless should prevail over plaintiff because plaintiff's security interest was never perfected under the code and because as between two unperfected security interests the prior in time is the prior in right. They argue that plaintiff's security interest was never perfected because the security agreement which was filed failed to include either the debtor's or secured party's mailing address as required by section 9402, subdivision (1). Section 9302 provides that a security interest such as plaintiff's is perfected when a financing statement is filed. Section 9402, subdivision (1), requires a financing statement to include "the name and mailing address of the secured party, the name and mailing address of the debtor . . . if the debtor is an organization, the address of its chief place of business . . . ." The security agreement filed as a financing statement under section 9402, subdivision (1), contained the following information: "Kermin Frozen Food Co., Inc. of Los Angeles, County of Los Angeles, Debtor; Malcolm Goldie of Palos Verdes Estates, County of Los Angeles

---

[8]We reject as without merit defendants' tangential claim that the packaging machine was not a trade fixture "because it was installed by an owner, not a tenant." The point of the argument seems to be that the machine became a fixture under Civil Code section 660 and upon sale of the real property by Henry Kermin, Pick and Messler, and thereafter Bauchet Properties, acquired title to the packaging machine by the grant deeds to the real property. On the contrary the record shows without contradiction that Henry Kermin and his wife were the owners of the real property but that the machine was purchased and installed, not by such owners, but by the Kermin Frozen Food Co., Inc., and that as the court found, it "was held in place by anchor bolts and was removable by unscrewing the nuts from the anchor bolts." Upon sale of the property the machine continued to be the property of the above corporate owner to whom (along with Kermin Frozen Food Sales Co.) the buyers Messler and Pick leased back the real property for a term of 20 years. Manifestly the machine remained a part of the machinery and equipment of the corporate lessee and became subject to the lessors' lien. (See fn. 2, *ante,* and accompanying text.) As pointed out earlier, the trial court found and concluded on substantial evidence that it was a "trade fixture." Under the circumstances the court did not err in rejecting defendants' attempt to show that the machine was purchased and installed by Henry Kermin personally, who according to defendants' theory intended it to be other than a trade fixture.

. . . Packaging Machine . . . located at 490 Bauchet Street, Los Angeles, California." Subdivision (5), of section 9402 provides: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." In *General Electric Credit Corp.* v. *Aurora Mobile Homes, Inc.* (1974) 37 Cal.App.3d 1016 [112 Cal.Rptr. 735], the court held (1) that the party claiming the address was defective must show that he was in fact misled by the defective addresses and (2) cited approvingly the Secretary of State's practice of accepting for filing any financing statement that has one of the following complete street addresses given: (1) the debtor's mailing address, (2) the debtor's residence address or (3) the address of the debtor's chief place of business, since "the primary purpose of the address on financing statements is to enable interested persons to obtain information about the security interest." (*Id.* at p. 1022.)

In the case at bench defendants have made no showing that they examined the security agreement as filed or that they were misled at all by the allegedly defective addresses. Moreover, the addresses, while incomplete at the beginning of the security agreement, substantially comply since the actual full street address of the debtor's place of business where the collateral is located is given. We conclude that plaintiff perfected his security interest in accordance with the code.

In view of the conclusions we have reached, we deem it unnecessary to consider the remaining contentions urged by defendants.[9]

The judgment is reversed and the cause is remanded to the trial court with directions to determine the nature of defendants' interest in the packaging machine in conformity with the views herein expressed; and, thereafter, having reexamined and redetermined all issues, to make and

---

[9]Defendants claim that this action was brought under the claim and delivery law, that this law was declared unconstitutional in *Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206], and that therefore plaintiff is not entitled to recover under an unconstitutional law. Defendants have confused an action for specific recovery of property with the provisional remedy of claim and delivery (see 2 Witkin, Cal. Procedure (2d ed.) § 24, p. 1480). Only the provisional remedy, which was not used in this case, was declared unconstitutional, not the substantive action to recover specific property.

file findings of fact and conclusions of law in conformity with the views herein expressed; and to enter judgment accordingly.[10]

McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.

---

[10]For the guidance of the court upon retrial, it should be noted that defendants in their second affirmative defense pleaded facts which may, depending upon the determination of the facts by the trial court, allow judgment for defendants to the effect that they are the owners of the machine and entitled to possession thereof, without their filing any third party claim remedies under former Code of Civil Procedure section 519. Defendants' answer clearly tendered the issue of ownership and right to possession of the machine.