In re Kenneth Wayne LEACH and Janice Ruth Leach, Debtors.

Suzanne C. SCHULMAN, Trustee, Plaintiff,

v.

FORD MOTOR CREDIT CO., Kenneth Wayne Leach, and Janice Ruth Leach, Defendants.

Bankruptcy No. 395–06832–AT.
Adv. No. 396–0337A.

United States Bankruptcy Court, M.D. Tennessee.

March 26, 1997.

William T. Cheek, III, Nashville, TN, for Plaintiff.

Kevin J. Jones, Nashville, TN, for Defendant Ford Motor Credit Company.

## *MEMORANDUM*

ALETA ARTHUR TRAUGER, Bankruptcy Judge.

The court has before it defendant Ford Motor Credit Company's (Ford's) Motion for summary judgment filed January 15, 1997, and plaintiff Chapter 13 Trustee's Motion for Summary Judgment filed January 21, 1997. Ford argues that a defective Certificate of Title perfected its security interest in co-debtor Kenneth Wayne Leach's vehicle. The parties have filed briefs, stipulations, and numerous exhibits. The court heard oral argument on January 28, 1997, after which supplemental briefs and stipulations were filed.

The court finds, for the reasons set forth herein, that plaintiff Trustee is entitled to summary judgment.

### I

FED.R.CIV.P. 56(c), made applicable in bankruptcy through FED.R.BANKR.P. 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." While the evidence must be considered in the light most favorable to the nonmoving party, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See Moore v. Philip Morris Cos.,* 8 F.3d 335 (6th Cir.1993); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II

The parties have stipulated that co-debtor Kenneth Wayne Leach purchased a 1995 Ford Aerostar from Bell Ford in Nashville, Tennessee, on August 21, 1995. Mr. Leach, through his execution of a Tennessee Simple Interest Vehicle Retail Instal[l]ment Contract, granted a security interest in the vehicle to defendant Ford. An Application for Certificate of Title and Registration was delivered to the county court clerk on August 29, 1995. The application listed GMAC as the first lienholder. The address listed for GMAC is Ford's address at 4501 Circle 75 Parkway, Atlanta, Georgia 30339. A Certificate of Title was issued on October 9, 1995, which lists GMAC at Ford's address as the first lienholder.

The foregoing steps satisfied all the requirements of Tennessee's motor vehicle title and registration laws, except one. Ford unintentionally listed GMAC as the first lienholder. Defendant Ford argues that, despite this mistake, it has a properly perfected security interest in the vehicle. Plaintiff, Chapter 13 Trustee Suzanne C. Schulman, disagrees.

The debtors commenced their Chapter 13 bankruptcy case on September 27, 1995. Thereafter, Mr. Leach executed an Affidavit for Replacement Certificate of Title, which lists Ford as the first lienholder at Post Office Box 305106, Nashville, Tennessee 37230. The affidavit was sent to the Titling and Registration Division for the State of Tennessee with a letter from Ford dated December 7, 1995. The letter explains that Ford never received a title issued on October 30, 1995.[1] A hand-written notation at the bottom of the letter states: "Title was sent to State for lienholder correction. We never received corrected title."

The Chapter 13 Trustee filed her complaint on October 1, 1996, to avoid Ford's lien under Bankruptcy Code § 547(b).[2] On January 28, 1997, the complaint was amended by consent to add an alternative claim for relief under § 549(a). The parties agree that the outcome here is solely dependent upon whether the defective Certificate of Title perfected Ford's security interest. Ford conceded at oral argument that if it failed to perfect its security interest through the October 9, 1995 Certificate of Title, its postpetition attempts to correct the title violated the automatic stay and any postpetition transactions are avoidable.

## III

In Tennessee, a security interest in a motor vehicle can be perfected only through compliance with the motor vehicle title and registration laws. TENN.CODE ANN. § 47–9–302(4) (Michie 1996); *Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437, 442 (Tenn.Ct.App.1994). When Ford attempted to perfect its interest in 1995, it was required to comply with TENN.CODE ANN. §§ 55–3–126 and –137 (Michie 1993).[3] Under these statutes, Ford was not perfected until its lien was properly noted on a certificate of title. *See Still v. First Tenn. Bank*, 900 S.W.2d 282, 285 (Tenn.1995).[4] In order to have a lien notation made on a certificate of title in 1995, "an application for a certificate of title containing the name and address of the holder of a security interest or lien and the required fee" must have been delivered to the county clerk. § 55–3–137(b)(1) (Michie 1993). When a notation was made in accordance with the former statutes, the date of

---

1. The parties make no argument with respect to an October 30, 1995 Certificate of Title. The parties have only provided the court with a copy of the October 9, 1995 Certificate of Title, and their arguments focus on this earlier title. The court, therefore, will not address the relevance, if any, of the October 30 title.

2. The debtors' Chapter 13 plan was confirmed January 9, 1996, and Ford received monthly payments on its allegedly secured claim until September 1996. Plaintiff also seeks through her complaint turnover of funds received by Ford through the Chapter 13 plan, modification of the plan to treat Ford as an unsecured creditor, and attorney fees pursuant to Local Bankruptcy Rule 3.22.

3. These sections were merged into the current version of § 55–3–126 (Michie Supp.1996), which became effective March 29, 1996. 1996 TENN.PUB ACTS 687, § 4.

4. The *Still* holding was rejected by the Tennessee Legislature with the enactment of amendments to §§ 55–3–126 and –137. *See supra* note 3.

perfection related back to the time of delivery to the county clerk. *Still*, 900 S.W.2d at 285. If delivery to the county clerk occurred within twenty days of the date on which the security interest arose, "the date of perfection [was] deemed the date on which the interest was created." *Id.*[5]

Despite the mistake on the Certificate of Title, Ford argues that its lien was properly noted on October 9, 1995, and the date of perfection relates back to August 29, 1995, the time of delivery to the county clerk. Because delivery to the county clerk occurred within twenty days of August 21, 1995, the date on which the security interest arose, Ford argues that it was perfected as of August 21, 1995.

Ford bases its argument upon authority which suggests that the standard which determines the effect of mistakes made in financing statements ought, by analogy, to apply to mistakes made in lien notations on certificates of title. *See In re French*, 317 F.Supp. 1226 (E.D.Tenn.1970); *Coble Sys., Inc. v. Coors of the Cumberland, Inc. (In re Coors of the Cumberland, Inc.)*, 19 B.R. 313 (Bankr.M.D.Tenn.1982). That standard, as set out at TENN.CODE ANN. § 47–9–402(8) (Michie 1996), provides: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

Even if the court agrees that this standard ought to apply to certificates of title, Ford does not prevail. In the only two cases upon which Ford relies, the courts found that mistakes were "minor" and "not seriously mis-

leading" in situations entirely different from the case at hand. In *French*, the financing statement correctly listed the names of the debtor and the secured party but failed to list the address of either. 317 F.Supp. at 1227. In *Coors*, the secured party was listed as the owner on several certificates of title, rather than as the lienholder. 19 B.R. at 320. The court held this mistake not seriously misleading because "[a]nyone diligently searching the certificate of title records would discover that Coble [the creditor] possessed an interest in these vehicles." *Id.* at 321. In both *French* and *Coors*, the name of the secured party appeared on the document. In the case at hand, the name of the secured party, defendant Ford, appears nowhere on the document.

■ The Sixth Circuit has held that minor mistakes in names on financing statements are not fatal. *See Corwin v. RCA Corp. (In re Kittyhawk Television Corp.)*, 516 F.2d 24 (6th Cir.1975). The standard is that the incorrect name must be "sufficiently similar" or "sufficiently accurate" so that "a third party could reasonably be expected to be put on notice or at least to be required to make further inquiry." *Id.* at 28. That standard is not met here. GMAC is not "sufficiently similar" to Ford, a major competitor.[6] The notation of GMAC as lienholder is not "sufficiently accurate" to cause third parties to inquire further so that they might discover the correct lienholder. Ford asserts that having its correct address on the Certificate of Title under GMAC's name would somehow lead a third party to Ford,[7] but there was no

---

5. The conflict that existed between § 55–3–137 and Bankruptcy Code § 547(c)(3)(B) and (e)(2) prior to the Bankruptcy Reform Act of 1994 need not be addressed. The debtors commenced their case after the effective date of the Reform Act.

6. Ford argues that the notation of GMAC, instead of FMCC (the initials of Ford Motor Credit Company), is simply an inadvertent misplacement of two of the four letters in the lienholder's name. The court will not hold that GMAC is "sufficiently similar" to FMCC based simply on the notion that two letters in the name are identical.

7. Ford's brief filed January 15, 1997, sets forth: Any creditor investigating this asset of the debtor from August 29, 1995 forward would have discovered that an entity, other than the

debtor, was claiming an interest in the vehicle. If that inquiring creditor had inquired at the address listed on the application, they would have been put in touch with offices of FMCC's Title Receipt Department. No one has been prejudiced by this alleged defect in the application. The world had notice within the relation back period that there was a lien on this vehicle held by some entity. . . .

. . . .

. . . Notwithstanding the inadvertent mistake, if a searcher should have had reason to know by the notation of lien that another party had an interest, that searcher would have had a duty to investigate further. Such an investigation, if diligently performed, would have revealed that the address inquired into was that of FMCC's Title Department, and that FMCC

evidence presented from which the court could conclude that Ford's assertion is correct. *Cf. Waldschmidt v. Smith (In re York),* 43 B.R. 36, 37, 39 (Bankr.M.D.Tenn. 1984).

One case, cited by the Trustee, is squarely on point. In *Newton v. First American National Bank (In re Webb),* 106 B.R. 517 (Bankr.E.D.Tenn.1989), the court held that First American National Bank's interest was unperfected because it erroneously listed another bank as the lienholder on a certificate of title. Although the error was "clerical," *id.* at 519, the court rejected First American's argument that it was not minor and not seriously misleading based on the following analysis:

> [T]he mistake, a major one, was listing an entity with no lien or interest in the automobile whatsoever. An inquiry made to one who has no connection to the debtor or to the secured party relative to the security interest in question could not be expected to result in a discovery of the actual secured creditor's lien. The stranger to the secured transaction could merely state that it has no lien or security interest in the collateral and that any notation to the contrary is simply false. Listing this third party as the lienholder when in fact it is a stranger to the entire transaction cannot be characterized as anything but a major mistake which is seriously misleading.

*Id.* at 521; *see also Headlee v. Ferrous Fin. Servs. (In re Butler's Tire and Battery Co.),* 17 U.C.C.Rep.Serv. (Callaghan) 1363, 1975 WL 22897 (Bankr.D.Or.1975), *aff'd,* 18 U.C.C.Rep.Serv. (Callaghan) 1302, 1976 WL 23725 (D.Or.1976), *withdrawn and appeal dismissed on other grounds as noted and aff'd in* 592 F.2d 1028 (9th Cir.1979). The one distinguishing fact in the case at hand is that Ford's correct address was listed. But, as previously stated, it is not self-evident, and no evidence was introduced which would lead one to conclude, that the correct lienholder's address listed under the incorrect lienholder's name would have led to the discovery of the true lienholder.

did have an interest in said vehicle. Therefore FMCC has perfected under Tennessee law as their lien does give notice to a diligent search-

The requirements of § 55–3–137(b)(1) are clear, and Ford failed to comply with them. The mistake in the name of the lienholder on the Certificate of Title is fatal. Assuming that the "minor" and "not seriously misleading" standard applies, Ford's mistake does not come within it.

 An appropriate order will be entered granting summary judgment in favor of plaintiff Trustee. The debtors' plan may be modified upon the filing of a motion to modify and upon proper notice to all creditors. Ford shall turn over all funds received through the Chapter 13 plan, to the extent they exceed what Ford would have received if it had been treated as an unsecured creditor under the plan. Plaintiff's request for attorney fees pursuant to Local Bankruptcy Rule 3.22 is denied. The Local Rule is not intended to apply to situations where there is a legitimate, legal dispute as to perfection of a security interest.

er that someone does have an interest in the vehicle.